D'Arcy *v.* Mutual Life Ins. Co.

(*Jackson.* May 8, 1902.)

1. INSURANCE. *Service of process on foreign insurance company.*

Acts 1875, Ch. 66, provided that foreign insurance companies, desiring to do business in this State, should file with the Insurance Commissioner a power of attorney authorizing the Secretary of State to acknowledge service of process for and in behalf of such companies at any and all times after they have complied with the laws of the State and been regularly admitted, even though they may have subsequently retired or been excluded from the State. This Act was expressly repealed by Acts 1895, Ch. 160. The latter Act required of such companies a power of attorney authorizing the State Treasurer, *ex officio* Insurance Commissioner, to acknowledge service of process. Between the dates of these two acts the ·defendant, a foreign insurance company, entered the State, filed the power of attorney required by the Act of 1875, took the policy sued on, and retired from the State. It did not file power of attorney as required by Acts 1895. This suit was brought after passage of Act of 1895 and repeal of Act of 1875, and process was acknowledged by the Secretary of State as provided by Act of 1875. *Held,* The defendant was properly brought before the Court by this acknowledgment of service of process by the Secretary of State under Act of 1875; that the provision of said Act touching acknowledgment of service of process, though pertaining to the remedy on the policy, entered into and formed a material part of the obligation of the contract and could not, therefore, ·be constitutionally repealed so far as it affected pre-existing policies; and that such power of attorney was irrevocable as to such policies as were taken by defendant in this State. (*Post, pp. 571–575.*)

Acts construed: Acts 1875, Ch. 66; Acts 1895, Ch. 160.

Cases cited: State *v.* Insurance Co., 106 Tenn., 282; Collins *v.* Railroad, 9 Heis., 845; McAdoo *v.* Smith, 5 Bax., 695; State *v.* Phœnix Ins. Co., 92 Tenn., 431.

D'Arcy v. Mutual Life Ins. Co.

2. INSURANCE, LIFE.  *Husband's policy payable to widow if she survives, otherwise to his children construed.*

Under a life policy payable to the insured's wife, should she survive him, otherwise to her children by him, the children take several and transmissible interests immediately upon delivery of the policy, subject to be defeated by the survivorship of the wife, but not by any transfer of the policy by the insured by deed, will or otherwise. (*Post, pp. 575–581.*)

Cases cited: Glenn v. Burns, 100 Tenn., 295; Gosling v. Caldwell, 1 Lea, 454.

3. SAME.  *For benefit of married woman survives to her husband.*

Where the beneficiary in a life policy is a married woman, who dies before the assured leaving a husband who survives the assured, her husband, not her children or other next of kin, takes the benefit of such insurance *jure mariti* as he takes other choses in action of the wife; and the husband, not the wife's personal representative, is entitled to sue for and recover same. (*Post, pp. 575–581.*)

Cases cited: Scobey v. Waters, 10 Lea, 561; Mutual Life Ins. Co. v. Hamilton, 5 Sneed, 269; Handwerker v. Diermeyer, 96 Tenn., 627; Rice v. McReynolds, 8 Lea, 37; Railroad v. Johnson, 97 Tenn., 674; Homrico v. Laird, 10 Yer., 222; Trafford v. Express Co., 8 Lea, 96; Prewett v. Bunch, 101 Tenn., 736; Tune v. Cooper, 4 Sneed 296.

FROM  SHELBY.

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

WILKERSON & McGEHEE for D'Arcy.

FRANCIS FENTRESS for Mutual Life Insurance Co.

McALISTER, J.   This is a suit on a policy of life insurance.   It was issued by defendant company

for the sum of $2,000 on the life of James Sweeney, who died on the 16th of July, 1901. The policy, on its face, was made payable to Mrs. Annie Sweeney, wife of the insured (if living at his death, otherwise to their children). The policy was on the ten-payment plan, and was fully paid. Mrs. Annie Sweeney, wife of the insured and beneficiary of the policy, died many years prior to her husband, and left surviving her a daughter. This daughter inter-married with James D'Arcy, and bore him one child, Alexander D'Arcy. Mrs. D'Arcy died prior to the death of her father, James Sweeney, the insured, and left her husband, James D'Arcy, and her son, Alexander D'Arcy, surviving. The policy in suit was surrendered by James Sweeney in 1894, for its cash surrender value, amounting to $850. It appears that before the company would pay the cash surrender value of the policy in 1894, they required a guardian to be appointed for Alexander D'Arcy, the minor grandson of the insured. The insured, James Sweeney, was duly qualified as his guardian by the Probate Court of Shelby County. The minor, Alexander D'Arcy, was, at the time, a resident of the State of Georgia, and not within the jurisdiction of of the Courts of this State. The bill alleges that this guardianship was void. The present bill is preferred by James D'Arcy, husband of the daughter of James Sweeney, the insured, claiming the entire proceeds of this policy. He also sues as next friend of his son, Alexander D'Arcy, for the purpose of

having his rights adjudicated and determined. The
insured died on the 16th of July, 1901. Process
was duly issued and served upon Reau E. Folk,
State Insurance Commissioner. The defendant com-
pany filed a plea in abatement to the suit, averring,
in substance, that said Commissioner had no author-
ity to acknowledge service of process for the com-
pany, for the reason it had withdrawn from the
State in 1894, and had not executed a power of
attorney to the State Treasurer, authorizing him to
accept service of process. The Chancellor sustained
this plea. The complainant thereupon had an alias
subpœna issued, which was served upon John W.
Morton, Secretary of State, and attorney in fact
for the company. Defendant company, by counsel,
moved to quash this alias subpœna on the grounds
that the Secretary of State had no authority to ac-
cept service, since the Act of 1875, giving him such
authority, had been repealed by the Act of 1895.
The motion to quash was overruled. Defendant com-
pany then demurred, which demurrer was overruled.
The grounds for demurrer were, first, that it ap-
peared from the bill that said policy was a chose in
action which had never been reduced to possession
in the lifetime of Mrs. D'Arcy, and that no action
could be maintained by the husband, but that suit
should have been brought by him as administrator
of his deceased wife; second, that it does not appear
from the bill that Mrs. D'Arcy died intestate. The

Court overruled the demurrer, and under the statute permitted the defendant company to appeal.

The second and third assignments of error raise the question whether service of process on the Secretary of State was sufficient and gave the Court jurisdiction of defendant company. It is insisted that the Act of 1875, requiring foreign insurance companies doing business in this State to file with Secretary of State a power of attorney constituting said officer attorney in fact, upon whom process against the company might be served, was repealed by the Act of 1895. It is admitted that the only power of attorney ever filed by the defendant company in this State was in March, 1875, under the Act of 1875, authorizing the Secretary of State to accept service. The Act of 1895 expressly repealed the Act of 1875, and provided that the State Treasurer, as ex officio State Insurance Commissioner, should be provided with a power of attorney by foreign insurance companies doing business in this State. It is insisted by the counsel for the complainant below that the Act of 1875 provided that the power of attorney deposited with the Secretary of State should be irrevocable, and that so long as that said company had any business in this State, and that until a new power of attorney is deposited with the State Treasurer under Act of 1895, service of process may be made upon the Secretary of State under the power of attorney executed to said officer under the Act of 1875. It appears that when the

Act of 1895 was passed, defendant company had withdrawn from the State, and did not execute any power of attorney, as required by that Act. 22 Pickle, 282.

It is well settled that the remedy enters into and forms a material · part of the obligation of a contract. *Von Hoffman* v. *Quincy*, 71 U. S., 735 ; *Collins* v. *E. Tenn., Va. & Ga. R. R.,* 9 Heis., 845. But a change of remedy does not impair the obligation of a contract unless all remedy is taken away. *Tennessee* v. *Sneed*, 96 U. S., 69; *McAdoo* v. *Smith*, 5 Bax., 695.

It is insisted by counsel for the defendant that a ermedy still exists to sue this company at its home office in Connecticut. But the remedy provided by the Act of 1875 was the right to sue a foreign corporation in the Courts of this State.

It is well settled that the State has a right to exclude all foreign insurance companies from its borders if it see proper to do so, or to admit them on such · terms as it may choose, however onerous. *State* v. *Phœnix Ins. Co.*, 8 Pickle, 431; *Paul* v. *Virginia*, 8 Wall., 168; *Ducat* v. *Chicago*, 10 Wall., 410; *Chicago Ins. Co.* v. *Needles*, 113 U. S., 574; *Doyle* v. *Central Ins. Co.*, 94 U. S., 535.

Foreign corporations are not citizens within the clauses of the Federal Constitution providing that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. *Bank* v. *Earle*, 13 Peters, 538; *Mining*

*Co.* v. *Penn.*, 125 U. S., 181; 1 Joyce on Ins., Sec. 328; 1 Tomp. on Corp., Sec., 7928; 13 Am. & Eng. Enc. Law, 845.

So it has been held that the business of a foreign insurance company is not interstate commerce. *Paul* v. *Virginia*, 8 Wall., 168; *Hooper* v. *Cal.*, 155 U. S., 648; 1 Joyce on Ins., Sec. 328.

It has been held that foreign corporations are "persons" within that clause of the Fourteenth Amendment which provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws," but this clause does not affect the power of the State to exclude from the State foreign corporations, or to prescribe any condition it may choose for their admission. 13 Am. & Eng. Enc. Law, 846; 119 U. S., 110; 118 U. S., 394; 125 U. S., 181.

Any other construction of this clause would entitle foreign corporations to the same privileges as domestic corporations, and as has been seen it is within power of the State to exclude foreign corporations entirely. 13 Am. & Eng. Enc. Law, 846; 119 U. S., 110. These principles are all well settled. The Act of 1875, Ch. 66, in prescribing the conditions upon which foreign insurance companies should be permitted to enter the State and continue business here provided in Section 12, viz.: "That any such company or corporation desiring to transact any such aforesaid business in this State by any agent or agents, shall file with the Insurance Commissioner a power

of attorney authorizing the Secretary of State afore-
said to acknowlege service of process for and in
behalf of such company at any and all times after
a company has once complied with the laws of Ten-
nessee and been regularly admitted, *even though such*
company may subsequently have retired from the
State, or been excluded," etc., etc. It is conceded
that the defendant company, a foreign corporation,
complied with this Act in 1876, by depositing with
the Secretary of State the prescribed power of at-
torney. By the terms of this Act, that power of
attorney became irrevocable so long as said company
transacted business in this State, or left outstanding
or unsatisfied policies, although it might subsequently
retire from the State, or be excluded by its laws.
That act was designed to furnish the policy holder
in this State a remedy against foreign corporations
for the collection of his policy in this State. That
remedy entered into and became a part of the con-
tract between the company and its policy holder,
and that remedy could not be destroyed without sup-
plying another equally as adequate, without impair-
ing the obligation of the contract. The Act of
1895, Ch. 160, did, by its 49th section, expressly
repeal the Act of 1875, Ch. 66, and provided in
Sub-section 3 of Section 9, that no foreign insurance
company shall be admitted or authorized to do busi
ness in this State until it has deposited with the
State Treasurer or Insurance Commissioner a power
of attorney upon whom process against it may be

served.    The present defendant retired from the State before the passage of the Act of 1895, and, of course, had not complied with any of its terms. ·So that now policy holders are remediless, unless the power of attorney executed by the company to the Secretary of State in 1876, under the provisions of the Act of 1875, is still effective.    If the Act of 1895 had undertaken to abrogate the only remedy · the policy holder had, it would to that extent, be clearly unconstitutional.    But that act was not designed to interfere with the remedy which policy holders had acquired prior to the retirement of the company.    Such policy holders are still entitled to service of process on the Secretary of State, and their remedy is wholly preserved and unimpaired.

The fourth assignment of error, goes to the action of the Court in overruling the demurrer of the defendant, the substance of which was that the complainant could not maintain this suit in his own name as husband and next friend of his child, but that it was necessary for the suit to be brought by an administrator for the wife, and that it was necessary to allege the intestacy of the wife.    Complainant's counsel state in their brief, viz.:  "The theory upon which this brief was filed, was that where the policy was made payable to the wife, Annie Sweeney, if living at the time of the death of the insured, otherwise to her children by him; the effect was to confer vested rights upon the wife of the insured, and her children by him, and to place the policy

of insurance beyond the control of the insured.
That upon the death of Mrs. Annie Sweeney, wife
of the insured, the entire interest of the policy be-
came vested in Mrs. D'Arcy, the only child by the
insured, and upon the death of Mrs. D'Arcy, her
entire interest in the policy became the absolute prop-
erty of her husband, James D'Arcy. Our conten-
tion is, that Mrs. Sweeney acquired a vested inter-
est in the policy of insurance, the moment it was
issued, and upon her death her interest vested in
Mrs. D'Arcy, and upon her death the property be-
came the absolute property of her husband, James
D'Arcy, *jure mariti*, and that he being the absolute
owner, the property is not liable for the debt of
Mrs. D'Arcy, and he therefore has the right to
maintain this suit in his own name.

"*Policy a Vested Interest.*—A policy and the money
to become due under it, belongs, the moment it is
issued, to the person or persons named therein as
beneficiaries and there is no power in the person
procuring the insurance by deed, will or otherwise,
to transfer the interest of the persons therein named.
*Bank of Washington* v. *Hume*, 128 U. S., 132,
(32 Law Ed., 171).

" Under a life policy payable to the insured's wife,
should she survive him, otherwise to her children by
him, the children take several and transmissible in-
terests immediately upon the delivery of the policy,
subject to the contingency of the wife surviving.

D'Arcy *v.* Mutual Life Ins. Co.

*Glenn* v. *Burns*, 16 Pickle, 295, and the cases therein cited.

" A husband cannot assign a policy taken out by himself and in terms payable to his wife and children. *Gosling* v. *Caldwell*, 1 Lea, 454.

" It is thus shown that Mrs. D'Arcy had a vested interest in the proceeds of this policy upon the death of her mother.

" *Policy of Insurance a Chose in Action.* —A policy of insurance, both at common law and by force of the Act of 1801, is a chose in action. *Scobey* v. *Waters*, 10 Lea, 561 ; *Mutual Life Ins. Co.* v. *Hamilton*, 5 Sneed, 269; *Handworker* v. *Deirmeyer*, 12 Pickle, 627."

It is insisted on behalf of the company that James D'Arcy has no right to maintain this suit, for the reason that he never reduced the policy to possession. The right to the proceeds of the policy was a chose in action, which, of course, could not be reduced to possession until after the death of the insured, James Sweeney, which occured in July, 1901. The policy was the mere evidence of the chose in action, and, of course, its possession remained in the hands of the insured. The present action was brought by James D'Arcy in his capacity as husband, and was an act on his part to reduce said chose in action to possession. It is difficult to see how he could have reduced it to possession during the life of his wife, for, until the insured, James Sweeney, died, there was no right of action in any

24 p—37

one. Counsel for the company cite Dicey on Parties to Actions, in which it is said, viz.: "If a contract be made after marriage, either with the wife alone or with the husband and wife, the effect produced by the death of either party is as follows: On the death of the husband before an action brought, the right survives to the widow, and not the husband's representatives. On the death of the wife before action brought, the right of action and contract made with her alone passes to her administrator, and her husband must sue in that capacity."

This is not the rule in this State. In *Rice* v. *McReynolds*, 8 Lea, 37, this Court said, viz.: "We take it to be too clear for argument, or need of authority, that the husband is entitled to receive and reduce to possession during coverture all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage, or accruing to her afterwards. If he fails to reduce them to possession during their coverture, and survives the wife, then his administrator, or personal representative, is entitled to them, and may sue for and recover them."

This rule is based upon the proposition that, upon the death of the wife, the husband becomes the absolute owner of her choses in action, *jure mariti*. We so decided in *Handworker* v. *Diermeyer*, 96 Tenn., 627. In that case we held that two life policies payable to the wife, upon her death became the absolute property of her husband. In that case

we approved the following statement of the rule, viz.: "All the choses of the wife not reduced to possession during the joint lives, by the common law, pass to the husband upon her death, and this is true whether such choses are then payable or are mere reversionary or contingent interests, payable at a future day, or mere possibilities."

This principle was recognized in this State in *Hamrico* v. *Laird*, 10 Yer., 222. In that case the husband sued, as administrator of his wife, to recover certain negroes, the separate property of his wife. In that case it was said: "It can scarcely now be made a question whether the husband, having administered upon the wife's estate, is entitled to retain the separate property and choses in action of the wife, after the payment of her debts, without distribution among her next of kin. He is not accurately described when called, as is sometimes done, her next of kin; nor does he derive his title to claim her personal property from the statutes of distribution, but he claims it, and is entitled, as husband, and, in right of the marriage, as owner." The concluding paragraph of that opinion is, viz.: "In truth, the complainant, although he states himself as administrator, yet he sues upon his title as husband and owner of the property."

In *Prewett* v. *Bunch*, 17 Pickle, 736, we held, viz.: "It is well settled that, if the wife dies before the reduction to possession, her chose in

action goes to the surviving husband," citing 10 Yer., 222; *Tune* v. *Cooper*, 4 Sneed, 296.

In the latter case the Court said that, upon no sound principle could a distinction be taken between the husband's right or the right of his personal representative to the wife's choses in action. It is true that the husband takes subject to the payment of any debts that the wife may owe or any equity or right that may be chargeable against it, but, with this condition, he has the clear right to bring the suit in his own name for the recovery of the chose.

The case of *Railroad* v. *Johnson,*, 13 Pickle, 674, was a suit by the husband, as administrator, to recover damages for the unlawful killing of his wife. Following the rule laid down in *Trafford,. Administrator*, v. *Adams Express Co.*, 8 Lea, 96, it was held that "the surviving husband was *jure mariti,* and, to the exclusion of the next kin, entitled to the damages" recoverable in such a case. It was further said in that case: "The recovery for a personal injury to a wife, which results in death, will inure to the benefit of the husband, under the statutory provisions discussed, and that he is entitled to this recovery under the common law rule of *jure mariti.*" But, in the course of the opinion, the following language was used, to wit: "To meet another objection of plaintiff in error to the form of this action, it may be said that the surviving husband, as such, could not have maintained this suit, but it

was essential that her administrator should have sued.''

This last remark was obiter, and is not authoritative in the present case.

In conclusion, it is only necessary to add that the minor, Alexander D'Arcy, took no interest in the policy, since his mother was the sole beneficiary of its proceeds, after the death of her mother, Mrs. Annie Sweeney. The insured, James Sweeney, had no authority to collect the cash surrender value of the policy in 1894, since his only daughter, Mrs. D'Arcy, as sole beneficiary, had a vested interest therein, which could not be affected by such a settlement.

It results that the decree of the Chancellor overruling the demurrer is affirmed, and cause remanded for further proceedings.