MRS. E. C. CAYARD *et al. v.* ROBERTSON & HOBBS *et al.*[*]

(*Knoxville.* September Term, 1910.)

**INDEMNITY INSURANCE.** Of employer against damages paid for injuries to employees does not inure to benefit of employees upon the employer's insolvency, though the insurer assumed the defense of the suit for the injuries.

Under a policy of indemnity insurance stipulating for the indemnity of an employer against loss for damages on account of bodily injuries accidentally suffered by his employees, but providing that no action shall lie against the insurer unless brought by the assured (the employer) to reimburse himself for loss actually sustained and paid by him in satisfaction of a final judgment after trial of the issue, there is no privity between an injured employee and the parties to the indemnity policy, which is a contract between the insurer and the assured employer, and alone for the latter's benefit; and such employee, with an unsatisfied judgment against the employer for personal injuries, cannot, upon the insolvency of the employer, obtain a decree against such insurer, and impound the amount of the policy, and appropriate the same to the satisfaction of his unpaid judgment. This rule is not affected by the fact that the insurer, upon the happening of the accident and notice thereof, assumed exclusive control of the negotiations for a settlement and of the defense of the action brought by the employee for his injuries, in accordance with the conditions of the policy; for the insured does not, by assuming such defense of the suit, place itself under obligation to pay the judgment therein recovered.

[*] As to injured employee's right to reach fund under employer's liability policy, see note in 7 L. R. A. (N. S.), 958.

Cayard v. Robertson.

Cases cited and approved:  Finley v. Casulty Co., 113 Tenn., 592;
    Connolly v. Bolster, 187 Mass., 266; Allen v. Gilman (C. C.),
    137 Fed., 136.
Case cited and disapproved:  Sanders v. Frankfort, etc., Insur-
    ance Co., 72 N. H., 485.

Cases cited as inapplicable:  Kennedy v. Fidelity & Casualty Co.,
    100 Minn., 1; Nesson v. United States Casualty Co., 201 Mass.,
    71.

FROM KNOX.

Appeal from the Chancery Court of Knox County.
HU L. M'CLUNG, Chancellor.

PICKLE, TURNER & KENNERLY, for complainants.

LUCKY, SANFORD & FOWLER, for defendants.

MR. JUSTICE BEARD delivered the opinion of the Court.

The complainants, in part as owners and in part as
lienors, are interested in a judgment for $5000, rendered
against Robertson & Hobbs for a fatal injury received
by an employee while in their service, as a result of
their actionable negligence.    This judgment has not
been paid, and, on account of the insolvency of the judg-
ment debtors, cannot be collected out of them.    At the
time of the injury Robertson & Hobbs were carrying
an employer's indemnity policy, issued to them by the
New Amsterdam Casualty Company, which covered the
injury that constituted the original cause of action, to
the extent of $5000.    The present bill is filed against

these parties and the Casualty Company, in which, after making all necessary allegations of fact, the complainants ask a decree against all the parties defendant, and especially against the Casualty Company, upon the policy referred to. While conceding by its demurrer the averments of fact made in the bill, the company denies, as a conclusion of law, all privity with the complainants, or any liability to them by reason of the issuance of the policy for the injury or death of the employee in question.

The introductory provision of the policy is as follows: "In consideration of one hundred and fifty dollars premium, . . . the New Amsterdam Casualty Company . . . does hereby agree to indemnify Robertson & Hobbs . . . for the term of twelve months . . . against loss from common-law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered by any employee or employees of the assured while on duty, . . . caused by negligence of the assured . . . . and against the expense of defending any suit for such damages."

After limiting the liability of the company "from an accident resulting in injuries to or in the death of one person" to $5000, under the head of "General Agreements" the following provisions or conditions were made:

"(1) The assured, upon the occurrence of an accident, shall give notice in writing within five days of the event causing the injury, with full particulars thereof,

to the home office of the company at New York City, or its duly authorized agent. He shall give like notice, with full particulars of any claim which may be made on account of such accident.

"(2) If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company shall defend such suit in the name and on behalf of the assured, or settle the same.

"(3) The assured shall not settle any claim except at his own costs, nor incur any expense, nor interfere in any negotiations for settlement, or in any legal proceeding, without the consent of the company previously given in writing. . . . The assured, when requested by the company, shall aid in securing information and evidence, and in effecting settlements, and in case the company calls for the attendance of any employee, or employees, as witnesses at inquests and in suits, the assured will secure his or their attendance, making no charge for his or their loss of time. . . . .

"(7) No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a final judgment after trial of the issue."

We had occasion in *Finley* v. *Casualty Company,* 113 Tenn., 592, 83 S. W., 2, to consider a policy in all material respects like the one at bar. We there recognized

the distinction made by the authorities between a policy insuring an employer against liability and one agreeing to indemnify the assured "against loss from liability for damages," and it was held that the policy then in question was of the latter character; and, further, that the amount of the insurance provided for in the policy did not become available until the payment of the loss by the assured, and could not be impounded by an employee and appropriated by him to an unsatisfied judgment against his employer.

We are entirely satisfied with the conclusions announced in that opinion, and it is necessarily controlling here, unless the two cases can be materially distinguished. This, it is insisted by counsel for complainants, they have succeeded in doing. The facts relied upon as radically distinguishing this from the earlier case and relieving complainants from its authority are that upon the occurrence of the accident and notice thereof the New Amsterdam Casualty Company, conceding that it fell within the terms of the policy, "undertook and assumed exclusive control of negotiations for settlement and of the defense of the suit" instituted by the injured employee, and "conducted the same in the name of Robertson & Hobbs, who were excluded from all participation therein, except as agents and assistants of" the defendant company. It is upon these facts, as well as under the terms of the policy, the contention is made by the complainants that the insurance company became the real defendant in that case, and that thus the ben-

efit of the policy and liability of the company "inured" to them, and entitles them to a decree in this cause.

It is true, in the Finley Case, that the indemnity company did not interfere in any way with the suit which the injured employee brought against the the master, but, to the contrary, denied liability for the injury, yet pending the suit it did pay the employer $50 in compromise and settlement of all claim under the policy. After the judgment obtained therein by the injured employee, he sought by a bill in equity to hold the Casualty Company liable for the amount of his recovery on two grounds: First, that the policy taken out by the employer upon the injury sustained by him inured at once to his benefit; and, second, if mistaken in this, then he had a right to impound the alleged debt in the hands of the company, and subject it to his judgment, because the compromise, mentioned above, was in fraud of his claim.

These two grounds for recovery were challenged as unsound by a demurrer, which was sustained by the chancellor, whose decree was afterwards affirmed by the court of civil appeals. On being brought into this court by *certiorari*, after consideration, the decree of the latter court was in all things affirmed; this court holding that under the contract there was no privity between the injured employee and the parties to the indemnity policy, that this contract was one between the company and the assured, and alone for his benefit.

If it be true, then, that the injured servant is not in privity with the parties to the contract, but that it

is solely made for the benefit of the master, and, as is provided in the seventh of the general agreements, set out above, that no action will lie against the company for any loss, unless brought by the assured "to reimburse him for a loss actually sustained and paid by him," it is difficult to see how the indemnity company in the present case so changed its relations to the parties and the contract that it became onerated with and obligated to pay the unsatisfied judgment of the employee because for its better protection it saw proper to avail itself of the terms of the general agreement No. 3, by defending the action in which that judgment was obtained.

To combat this view, and avoid the force of the holding in *Finley* v. *Casualty Company,* it is insisted that under the policy, when properly construed, in assuming the defense of the case against Robertson & Hobbs, the defendant company had placed itself under obligation to pay the judgment then recovered; and the counsel of complainants rely on *Sanders* v. *Frankfort Marine, etc., Co.,* 72 N. H., 485, 57 Atl., 655, 101 Am. St. Rep., 688, in support of their insistence.

The court delivering the opinion in that case is of recognized ability, and its decisions are entitled to great respect; but to accept its construction of the policy there involved would be to overrule *Finley* v. *Casualty Co.,* supra; for the two cases cannot stand together. It is true, as has been stated, that in the latter case the indemnity company did not take part in the defense of the servant's suit against the master, or exercise any

control over the master in resisting it, while in the San-
ders Case the reverse was true, yet to hold, with that
court, that "the insurer, after taking control of the pro-
ceeding against the assured, who is insolvent, cannot
be discharged of liability, except by payment of the in-
demnity, or a settlement of the plaintiff's claim reduced
to judgment," would be counter to our holding that in
such a policy there is no privity between the servant
and the parties to the contract, that the fund provided
for indemnity is not a trust fund, and the loss contem-
plated is that which the master sustains by the satisfac-
tion of the judgment obtained against him.

It will be found, on examination of the opinion of
the supreme court of New Hampshire, that the conclus-
sion therein announced rests largely on that portion of
section 2 of the general agreements, where, on receiv-
ing immediate notice of a suit brought against the as-
sured to recover damages on account of an accident, cov-
ered by the policy, the company undertakes "to defend
against such proceeding, in the name and on behalf of
the assured, or settle the same, at its own costs."

To the word "defend," used in the section, is given
the broad meaning "to protect, to secure against at-
tack—in short, to successfully defend," and then hold-
ing that under this section, when the company under-
took a defense, it "could only perform its covenant of
indemnity by assuming the liability." On this point,
it is said, in the course of the opinion, "the engagement
is not merely to contest the suit to judgment, but to
'defend against such proceedings,' meaning necessarily

all the proceedings in the suit founded on the claim for damages against the insured. The judgment is a proceeding in such a suit, as also is the execution. After final judgment, payment is ordinarily the only defense which will defeat further progress in the proceedings—the issuance of execution."

So, with this construction (and this was essential to avoid an irreconcilable conflict), it was held that the agreement or condition that "no action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment, after trial of the issue," was intended to "provide for the cases, if any should arise, where the company contended the claim arose from an accident not covered by the policy."

This court, however, gave a broader scope to this same clause in *Finley* v. *Casualty Company,* supra, and, construing it in connection with sections 2 and 3, held as follows: "While the company is bound to reimburse the assured for loss actually sustained and paid by him in satisfaction of a judgment recovered against him by an employee, yet, in order to make sure, as far as possible, that there shall be no recovery as a basis on which subsequently to establish a claim, the company reserves the right to defend the litigation, also to supervise any settlement that may be made, and to have a free hand in negotiating settlements of a claim made against the assured. As stated, if these provisions—that is, the second and third general agreements—stood alone, they

would furnish strong reasons for construing the contract as one against liability; but, from what has just been stated, it is perceived that they have a proper place in the contract against loss from liabilities from damage in the way of enabling the compony to minimize the loss."

In *Connolly* v. *Bolster et al.*, 187 Mass., 266, 72 N. E., 981, is presented a controversy similar in all respects to the one at bar. There the complainant, in a bill of equity, with an unsatisfied judgment against the master, rendered in a case where the indemnity company had assumed the defense, relied for his contention as to the liability of the company to him by reason of the terms of its policy on the authority of *Sanders* v. *Frankfort Insurance Co.*, supra. The court, however, declined to follow that case, saying, among other things, that the word "defend," as used in the policy, had its natural import, and that it meant there "what it means when counsel are retained to defend an action, and that it is not to be extended beyond that—to mean to successfully defend." As to the purpose and effect of the second clause, in which the word "defend" occurs, the court said that "they are plain, when taken in connection with the third. It is plainly inserted as an additional obligation and privilege for the protection of the insurance company, on the assumption that it is for the precuniary interests of the company to be given the conduct of and to defend the action which is to fix its liability, and the amount to be paid when liable, rather than to leave that matter to be dealt with by the several

persons injured, respectively. This does not result in the necessity of writing into clause 2 the qualifying words 'until final judgment,' as the plaintiff contends, for when final judgment is rendered all defense is at an end. Nothing remains but a writ of review, or a writ of error, and, if such a proceeding were necessary, it might well be held to be covered by the obligation to defend. But when the defense is ended, and in spite of the defense judgment is rendered against the insured, there is nothing to do but pay. Making payment of a judgment against it is no part of a covenant to defend the action. Whether the insurance company is bound to pay the judgment depends upon the terms of its agreement to indemnify the insured against loss, and the eighth (corresponding with the seventh clause in this policy) in terms provides that no action shall lie 'for any loss under this policy,' unless brought by the assured 'to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue.' "

In *Allen* v. *Gilman et al.* (C. C.), 137 Fed. 136, the same ruling is made. As to the opinion in *Sanders* v. *Frankfort, etc., Insurance Co.,* supra, the court said: "It is certainly opposed to the weight of authority, and I am not satisfied with the construction of the policy that the court found it necessary to adopt, in order to avoid the force of the provision forbidding suit by the insured until after he has paid the employee's judgment."

Cayard v. Robertson.

We are satisfied with the reasoning and conclusion announced by these two latter courts. The view taken by them of a policy, such as is the one at bar, we think is entirely sound. It is in accord with the general conclusion reached by this court in *Finley* v. *Casualty Co.,* supra.

We have examined the cases referred to by counsel for complainant in *Kennedy* v. *Fidelity & Casualty Co. of New York,* 100 Minn., 1, 110 N. W., 97, 9 L. R. A., (N. S.), 478, 117 Am. St. Rep., 658, and *Nesson* v. *United States Casualty Co.,* 201 Mass., 71, 87 N. E., 191, 131 Am. St. Rep., 390, and find that they have no bearing on the questions raised. It follows that the action of the chancellor in overruling the demurrer to this bill must be reversed, and the bill is dismissed.