Associated Indemnity Corporation of San Francisco, California, *v.* McAlexander.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

Lee Douglas and Wm. Howard Ewing, both of Nashville, for plaintiff in error.

Walker & Hooker and Chas. P. Hatcher, all of Nashville, for defendant in error.

Mr. Special Justice Smith delivered the opinion of the Court.

This is a suit upon a policy of automobile insurance issued March 30, 1930, expiring March 30, 1931, by plaintiff in error to Phillips-Buttorff Manufacturing Company, covering a number of its automobiles and trucks, among them a certain Ford coupé.

This car was listed as being owned by Phillips-Buttorff Manufacturing Company and registered in its name. It was purchased as a secondhand car by the company, pursuant to a proposal made to it by McQueen, the paymaster at the foundry of company that if it would buy the car, he would pay for its maintenance and upkeep,

the car to be used by the company during business hours, and after such hours, which ended at 5:30 P. M., to be in McQueen's possession, with the right in him to use it as he pleased for his own personal business or pleasure.

While the policy was in force and this arrangement between Phillips-Buttorff Company and McQueen also was in force, on October 7, 1930, the car, driven by McQueen, struck and killed Mrs. Janie P. McAlexander. The accident occurred after business hours of the Phillips-Buttorff Manufacturing Company, and while McQueen was using the car exclusively in his own business affairs.

A. S. McAlexander qualified as the administrator of his wife's estate, and, on October 17, 1930, brought suit in the Third Circuit Court of Davidson County against Phillips-Buttorff Manufacturing Company and McQueen for the death of his wife. He recovered a judgment for $12,500, which, on appeal, was reversed by the Court of Appeals as to the company, and affirmed as to McQueen, after being reduced to $10,000, and costs. *Phillips-Buttorff Mfg. Co. et al.* v. *McAlexander*, 15 Tenn. App., 618. The company was released because that court held that the car was not being used at the time in its business. The administrator's petition for *certiorari* was denied by this court on March 18, 1931.

During the pendency of the appeal of the aforesaid suit, McQueen was adjudicated a bankrupt; this judgment was scheduled as one of his liabilities, and his estate paid no dividends. He received a discharge in bankruptcy.

Thereafter, on June 5, 1932, the present suit was instituted by McAlexander, administrator, against the insurance company on the policy. Service was had on

and accepted by T. E. Miles, deputy commissioner of insurance and banking.

McAlexander, administrator, will hereinafter be referred to as plaintiff, and Associated Indemnity Corporation of San Francisco as defendant.

■■ The defendant first interposed a plea to the jurisdiction, its plea reciting that it was a California corporation; that on April 1, 1932, by proper proceedings with the insurance commissioner of this State, it had formally surrendered its power to transact further business in this State, and had thereafter ceased to do any business in Tennessee; that "thereafter the insurance Commissioner had no power to act for this defendant as to any legal process, except in an action against this defendant upon any policy, or liability issued or contracted during the time this defendant transacted business in the State of Tennessee;" and denied that the insurance commissioner thereafter had power to accept service on its behalf. A demurrer was interposed to this plea. The court below sustained the demurrer.

The trial court properly sustained the demurrer to the plea. Such pleas are strictly construed. It will be noted the plea does not aver that the commissioner had no authority to acknowledge service for it, but on the contrary, admits he did, when the action was based on a policy issued, or liability incurred, during the time the defendant transacted business in Tennessee. This being a suit based on an accident admittedly occurring while the policy was in force and while the defendant was doing business in Tennessee, the plea is bad. For another reason, the demurrer to this plea was properly sustained. At the time the policy was in force, and at the time the accident occurred, the statutes provided that

process against foreign insurance companies, doing business in Tennessee, might be served on the insurance commissioner, and that the companies should issue him a power of attorney to the end "which . . . shall continue in force, irrevocably, as long as any liability of the company remains outstanding in this State." Acts 1895, ch. 160, sec. 9, subsec. 3.

While the Code of 1932, which went into effect January 1, 1932, did not continue this provision (*Cartmell* v. *Mechanics' Ins. Co.*, 167 Tenn., 498, 71 S. W. (2d), 688), the Legislature could not, by repeal of the existing law, deprive the plaintiff of this right, as it existed at the time of the making of the contract of insurance (*D'Arcy* v. *Connecticut Mutual Life Ins. Co.*, 108 Tenn., 567, 69 S. W., 768, 770). In that case, under chapter 66 of the Acts of 1875, it appeared that foreign insurance companies were required to give an irrevocable power of attorney to the secretary of state. By chapter 160 of the Acts of 1895, this power was vested in the insurance commissioner. While the act of 1875, was in force, the defendant entered this State, and gave the required power to the secretary of state, and wrote a policy thereafter on the life of a person, who died before the defendant retired from the State and before the passage of the act of 1895. Suit was brought and process served on the insurance commissioner. A plea in abatement was sustained. New process was then issued and served on the secretary of state. A motion was made to quash, based on the theory that the act of 1875 had been repealed by the act of 1895, and that the effect was to repeal the original power of attorney given the secretary of state. The court said: "So that now policyholders are remediless, unless the power of attorney executed by

the company to the secretary of state in 1876, under the provisions of the act of 1875, is still effective.'' The court held that if the act of 1895 has undertaken to abrogate the only remedy the policyholder had, it would be, to that extent, clearly unconstitutional, but that act was not designed to interfere with the remedy which policyholders had acquired prior to the retirement of the company. Such policyholders, it was held, still were entitled to service of process on the secretary of state, and their remedy was preserved unimpaired.

The defendant relies upon a statement in the text of 25 Ruling Case Law, page 939, to the effect that no one can claim a vested right in any particular mode of procedure for the enforcement of his rights, and that while a repealing statute may not impair the obligation of contracts, the obligations of a contract are not impaired by limiting or altering the procedure for its enforcement. The text, however, continues with this qualification: ''Provided that a remedy is not withheld or denied, or the remedy given is not embarrassed with conditions or restrictions that impair the value of the right.'' This qualification was the basis in *D'Arcy* v. *Mutual Life Ins. Co., supra.* The court pointed out that foreign insurance companies came into this state to do business as a matter of grace and not of right, and subject to such conditions as the state might impose; that the remedy entered into and became a material part of the obligation of the contract; and that while, after withdrawal, a foreign insurance company could be sued in the state of its domicile, to force a policyholder in Tennessee to do so would be to impair the value of a contract right.

The trial court, therefore, properly sustained the demurrer to the plea to the jurisdiction. After the above

432

action on the plea to the jurisdiction, the defendant pleaded the general issue, and also three special pleas grounded on certain provisions of the policy.

The first special plea averred that no right of action existed in the plaintiff, under the terms of the policy, because of the fact that at the time of the accident the automobile in question was not used for the purposes stated in the declarations of the policy, to-wit, pleasure and business purposes of the "named assured," but said automobile was being operated by McQueen for his own pleasure and business, and was also being operated by him under a contract of rental with the "named assured."

The court holds that the above special plea cannot be sustained under the facts of the case and the applicable law. The policy covers liability, while the car is being operated either by the "named assured" or by a third person "with the permission of the named insured." This third person is called the "additional assured," and the policy expressly provides that "the terms and conditions of this insurance as respects Items 7 and/or 8 of the Schedule of Perils are so extended as to be available in the same manner and under the same conditions as they are available to the named insured to any person . . . ." operating the car with the permission of the "named assured."

In the declarations of the policy and schedule of coverage, a large number of trucks and passenger automobiles were listed—both commercial and private passenger type automobiles—and the following appears in the declarations:

"7. The automobile described will be principally used in or about—See Automobile Fleet Schedule endorsement attached.

"8. The purposes for which the automobile described herein will be used, are (a) if a private passenger typed automobile—pleasure and business purposes, (b) if commercial type vehicle—only in the business described above, including loading and unloading and incidental pleasure use for the named insured's family. (The term 'pleasure and business' is defined to exclude regular and frequent delivery.)"

Having regard to the terms and provisions of the declarations, and coverage clause, it is evident that it was not intended that this passenger car had to be used exclusively, at all times, in the business of Phillips-Buttorff Manufacturing Company; that it was being used by McQueen with the permission of the "named assured;" and that McQueen was an "additional assured," as provided in the policy. *Stovall* v. *New York Indemnity Co.,* 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368.

Did the use of the car by McQueen under the above arrangement with his employer constitute a rental or livery use? The policy excluded any coverage while a car was operated "for rental or livery use or the carrying of passengers for an expressed or implied consideration." It is claimed by defendant that under the arrangement, McQueen was a renter of the car, and using it by contract right, and not with the permission of the "named assured." Having regard to the language used, and the peril sought to be excluded by the exception, the court holds that the car was not being operated "for rental or livery." This cause seems designed to ex-

onerate the insurer against liability for damages while the "named assured," or the person into whose custody the "named assured" has placed the car, was using it for "rental or livery use, or the carrying of passengers for an expressed or implied-consideration." The words "rental use" seem to denote the custom, practice, or business of renting the car to the public generally, and not to prohibit a private arrangement of the character here involved between an employer and one of its employees.

The trial court did not err in overruling the first special plea of the defendant.

Under the second special plea, the defense was made that McQueen was not an "additional assured" within the meaning of the policy, because of the fact (a) that the automobile was not being operated at the time of the accident with the permission of the "named assured," but, on the contrary, was being operated by McQueen under a special contract with the "named assured," and (b) because at the time of the accident the automobile in question, by virtue of said contract, had been "sold, transferred or assigned" in violation of the prohibition and exception in the policy to that effect. So much of this plea as is embraced in subsection (a) thereof has been heretofore disposed of. The court is of the opinion that the effect of the agreement with McQueen did not constitute a sale, transfer, or assignment of the car within the meaning of the policy. This provision was intended to protect the insurer in those cases where there had been a real change in title, interest, or ownership. *Royal Indemnity Co.* v. *Hook,* 155 Va., 956, 157 S. E., 414; *Ocean Accident & Guarantee Corporation* v. *Bear,* 220 Ala., 491, 125 So., 676. The car, despite the

arrangement between Phillips-Buttorff Manufacturing Company and McQueen, was still the property of the former; remained registered in its name; and was subject to sale by it at any time.

The assignments of error, challenging the action of the trial court, in holding the second special plea bad, are overruled.

The third special plea is based on the "Bankruptcy Clause" of the policy, which reads as follows: "Bankruptcy or insolvency of the named Insured shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of this Policy and in case execution against the named Insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such bankruptcy or insolvency, an action may be maintained by such injured person, or his or her personal representative, against the Company on this Policy and subject to its terms and limitations for the amount of the judgment in said action, not exceeding the amount of limits of indemnity provided in this Policy; provided, however, that where two or more persons are injured in an accident covered by this Policy the Company may settle and pay any claim asserted, whether reduced to judgment or not, and such payments shall be accounted in diminution of the Company's total liability on account of such accident, and payments so made aggregating the full amount of this Policy shall extinguish all liability thereunder to said claimants and all other persons on account of such accident." The plea averred that there was no liability on the part of the defendant be-

cause the "named assured"— Phillips-Buttorff Manufacturing Company—had been exonerated from liability; that it was not insolvent or bankrupt; and that plaintiff had no right of action under the policy because the defendant had not agreed to pay in the event of the bankruptcy or insolvency of the "additional assured," McQueen.

Counsel for defendant argue that the express preservation of liability against the insurer, despite the bankruptcy of the "named assured," must be considered as an exclusion of liability in the event of the bankruptcy or insolvency of an "additional assured."

Before considering this defense, it is important to determine whether this is an indemnity policy as contended by defendant, or one protecting the assured from liability to the injured person.

Vance on Insurance (2d), page 683, note 85, cites and quotes with approval from *Maryland Casualty Co.* v. *Peppard*, 53 Okla., 515, 157 Pac., 106, L. R. A., 1916E, 597, as to the distinction: "It may be well to state here that the difference between the two classes of contracts is that upon the former an action cannot be brought and recovery had until the liability is discharged. While upon the latter the cause of action is complete when the liability attaches." Other cases, cited by the author, as recognizing the distinction, are: *Shea* v. *U. S. Fidelity & Guaranty Co.* (1923), 98 Conn., 447, 120 Atl., 286; *Frye* v. *Gas & Electric Co.* (1903), 97 Me., 241, 54 Atl., 395, 59 L. R. A., 444, 94 Am. St. Rep., 500; *Fenton* v. *Fidelity & Cas. Co.* (1899), 36 Ore., 283 56 Pac. 1096, 48 L. R. A., 770; *Malley* v. *American Indemnity Corp.* (1929), 297 Pa., 216, 146 Atl., 571, 81 A. L. R., 1322; *American Auto-*

*mobile Ins. Co.* v. *Cone* (Tex. Civ. App., 1923), 257 S. W., 961.

██ Under the indemnity form of contract, the effect of the assured's bankruptcy or insolvency is to release the insurer from all liability thereunder, since the assured cannot comply with the terms of the "no action clause," making payment by the assured a prerequisite to any liability on the part of the insurer.

In the absence, therefore, of a provision in a policy of indemnity continuing and preserving liability of the insurer in the event of the bankruptcy or insolvency of the assured, the insurer cannot be called on to pay the injured person for any injury or damage caused by the assured. *Cayard* v. *Robertson,* 123 Tenn., 382, 131 S. W., 864, 30 L. R. A. (N. S.), 1224, Ann. Cas., 1912C, 152.

██ If the policy, however, is one of liability, the duty to pay accrues on the rendition of a judgment against the assured.

██ By the terms of the policy under consideration, the defendant agreed to pay "loss from liability imposed by law for accidental bodily injury or death (other than hereinafter excepted) suffered or alleged to have been suffered by any person or persons due to the ownership or manipulation of any automobile described in the declaration and the use thereof described in the declarations . . .," and further, "To pay, irrespective of the limits of liability hereinafter stated, all costs, interest accruing after the entry of judgment until the Company has paid, tendered or deposited in Court, such part of such judgment as does not exceed the limit of the Company's liability thereon, and other expenses."

These provisions stamp and characterize this policy as one not of indemnity, but of insurance against lia-

bility, and the obligation to pay dates from the rendition of the judgment. *Gray* v. *Houck,* 167 Tenn., 233, 68 S. W. (2d), 117.

Under this policy, Phillips-Buttorff Manufacturing Company was the "named assured," and McQueen was the "additional assured." Both were entitled to protection against liability. The injured party can recover against either, despite bankruptcy, nothing else appearing, as the insurer has obligated itself absolutely and unconditionally to pay judgments against either, within the limits of the policy.

It is contended that the obligation of the insurer, made absolute and unconditional by previous provisions of the policy, to pay judgments rendered against either the "named assured" or the "additional assured," survives in the case of the bankruptcy or insolvency of the "named assured," but is destroyed in the event of the bankruptcy or insolvency of the "additional assured," and this, despite the fact that such liability in the case of the "additional assured" is not expressly excluded.

Clearly the argument of counsel for defendant, although not so phrased, is based on the proposition that the express preservation of liability in case of the bankruptcy or insolvency of the named assured, by inference and implication, excludes such liability in the case of the bankruptcy or insolvency of the additional assured, and this on the ground that the case is one to be ruled by the application of the maxim, *"Expressio unius est exclusio alterius"* (Co. Litt., 210a). It must be borne in mind that great caution is necessary in dealing with the maxim. *Saunders* v. *Evans,* 8 H. L. Cas., 729; Broom's Legal Maxims (8 Ed., 1911), 504, 506.

In discussing the maxim, in the course of his opinion, rendered in *Lowe* v. *Dorling & Son* (1906), 2 K. B., 772, 784, 785, FARWELL, L. J., said: "It is not enough that the express and the tacit are merely incongruous; it must be clear that they cannot reasonably be intended to co-exist. In *Colquhoun* v. *Brooks* (1887), 19 Q. B. D., 400, at p. 406; 57 L. J. Q. B., 70, at p. 73, WILLS, J., says: 'I may observe that the method of construction summarized in the maxim *"Expressio unius exclusio alterius"* is one that certainly requires to be watched. . . . The failure to make the *"expressio"* complete very often arises from accident, very often from the fact that it never struck the draughtsman that the thing supposed to be excluded needed specific mention of any kind.' LOPES, L. J., in the Court of Appeal (1888), 21 Q. B. D., 52, at p. 65; 57 L. J. Q. B., 439, at p. 446, says: 'The maxim *"Expressio unius exclusio alterius"* has been pressed upon us.' I agree with what is said in the Court below by WILLS, J., about this maxim. It is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The *exclusio* is often the result of inadvertence or accident, and the maxim ought not to be applied when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice." Beal's Cardinal Rules of Legal Interpretation (3 Ed. 1924), 84, 85. *Board of Park Commissioners* v. *City of Nashville,* 134 Tenn., 612, 631, 632, 185 S. W., 694.

On the same point, in *Gage* v. *Tirrell,* 9 Allen (91 Mass.), 299, 305, BIGELOW, C. J., said: "The maxim *expressio unius est exclusio alterius* is a cardinal rule of exposition, of familiar application, founded in good sense

and sound reason, and affording an appropriate method of arriving at the presumed intent of parties to deeds and instruments in which it is not fully expressed. But, as has been justly observed by a learned writer, great caution is requisite in applying the rule, lest it may be used for the purpose of defeating instead of subserving the real intent of parties. . . . There can be no doubt that where a party expressly covenants that he will do a certain act, he cannot qualify or restrict the covenant so as to excuse its non-performance by exceptions or limitations arising from implication only. In such cases, the inference is reasonable that if the parties did not mean that the covenant should be absolute, they would have expressed the limitation which they intended to put upon it.''

The presence of this clause in the policy, as has been stated above, doubtless is due to the fact that the draughtsman viewed the policy as one of indemnity and not of liability. Regardless of what the intention of the draughtsman may have been, as the court has held it to be a policy of liability, to uphold the contention of the defendant would produce inconsistency and injustice.

If the previously assumed absolute and unconditional obligation to pay any judgment rendered against the additional assured was intented to be destroyed by this clause, the object easily could have been attained by expressly so stating, and not leaving the question of such liability involved in ambiguity and obscurity.

In *Employers' Liability Assurance Corporation* v. *Morrow* (6th Cir.), 143 Fed., 750, 755, 74 C. C. A., 640, 645, the question presented was whether an absolute unconditional obligation to pay a certain sum, for the loss

of an arm, fixed in a prior part of an accident policy, was qualified and limited by subsequent sections, the effect of which would be materially to reduce the amount fixed by such prior section. In rejecting the contention of the insurer that the subsequent sections should be allowed so to operate, LURTON, J., said: ''We are the more disposed to apply this principle to a contract such as this because the instrument is not drawn systematically and terms are employed which signify a considerable degree of carelessness. In such case, it is more easy to conclude that the earlier parts of the instrument which most plainly set out the contract between the parties should prevail over a vague subsequent provision which would completely alter the principal terms of the agreement. . . .''

In substance, the same rule of construction was applied in *Stovall* v. *New York Indemnity Co.*, 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368, where a third party was seeking a recovery against an insurer. See, also, *Smithart* v. *John Hancock Mut. Life Ins. Co.*, 167 Tenn., 513, 525, 71 S. W. (2d), 1059.

The defendant, recognizing the well-settled rule that any ambiguity in an insurance contract is to be resolved in favor of the assured, insists that the rule should be applied only in a case between the insurer and assured, and that a contrary rule should be recognized when, as here, a third party is asserting liability against the insurer.

*Stovall* v. *New York Indemnity Co.*, *supra*, did not recognize any such distinction, and indeed no convincing argument is made as to why such a rule should be adopted.

In support of the contention that McAlexander cannot maintain this suit against the insurer, counsel for de-

fendant strongly rely on the decision by the Judicial Committee of the Privy Council in *Vandepitte* v. *Preferred Accident Insurance Co.* (1933), A. C., 70; *Id.*, (1933), 1 D. L. R., 289.

In that case, it appeared that a judgment for damages for personal injuries caused by her negligence, while driving her father's motorcar, with his permission, was obtained against Miss Berry. Execution was issued against her, but nothing was recovered. Thereupon, Mrs. Vandepitte, the injured party, sued the insurance companies which had issued policies to Miss Berry's father, and which contained provisions to the effect that liability was covered in case the motor vehicle, while being driven by one, with the permission of the owner, injured a third party. It was held that the action could not be maintained (1) because, under section 24 of the (British Columbia) insurance act, 1925, the section applied only where the person liable under the judgment is insured by an actual contract in law, and that the action failed, as there was no evidence that Mr. Berry had contracted on behalf of anybody but himself; and (2) even if the section had a wider application, the action failed because there was no evidence that Mr. Berry, the assured, intended to create a beneficial interest for his daughter.

Under English and Canadian law, it is settled that no one can sue on a contract except those who are contracting parties, and from and between whom consideration proceeds. *Tweedle* v. *Atkinson* (1861), 1 B. & S., 393; *Dunlop Pneumatic Tyre Co.* v. *Selfridge & Co.* (1915), A. C., 847, 853. An exception exists to this rule if it plainly appears that the contracting parties

intended to create a beneficial interest in favor of a third party.

Under section 24 it was provided that only one who signed an application for insurance was entitled to the benefits or subject to the liabilities of the contract; that Miss Berry was not a party to the contract, and as the third party beneficiary doctrine was not recognized in England and in Canada, no rights were created in her favor by the contract, and, further, that no intention appeared on the part of her father to create a beneficial interest for her in the contract of insurance.

In view of these facts, it was held that the provisions of the policy, so far as third party beneficiaries were concerned, were merely promissory warrants and obligations rather of honor than of law.

■■■ By the great weight of authority in the United States, the same facts that operate to create contractual relations between the offeror and the acceptor may also operate to create rights in a third party. Anson on Contracts (Corbin's Ed., 1930), 284-300; Wald's Pollock Contracts (Williston's Ed., 1906), 237-278.

This court often has announced the same doctrine. *McCarty* v. *Blevins*, 5 Yerg., 195, 26 Am. Dec., 262; *Brice* v. *King*, 1 Head, 152; *Moore* v. *Stovall*, 2 Lea, 543; *O'Conner* v. *O'Conner*, 88 Tenn., 76, 12 S. W., 447, 7 L. R. A., 33; *Christian* v. *John*, 111 Tenn., 92, 103, 76 S. W., 906.

■■■ The same rule applies where, as here, a policy of liability is issued obligating the insurer to pay any judgment for injury or damage suffered by a third party through the negligent operation of a motor vehicle by an assured. *Finkelberg* v. *Continental Casualty Co.*, 126

Wash., 543, 219 Pac., 12; *Rose & Son, Inc.,* v. *Zurich Gen. A. & L. Co.,* 296 Pa., 206, 145 Atl., 813.

The court is of the opinion that the trial judge did not err in overruling the third special plea.

 Further error is assigned by the defendant because the court below held that notice to the plaintiff in error, insurance company, was not required before the bringing of the suit. The clause in question reads: "Upon the occurrence of any accident covered under Items 7 and/or 8 of the Schedule of Perils, the insured shall give immediate written notice thereof to the Company and shall forward to the Company forthwith after receipt thereof, every written communication, or information as to any verbal communication, and every process, pleading and paper of any kind relating to any and all claims and proceedings."

Another clause provides that "no action shall be brought against the company to recover for any loss or damage covered under Items 7 and/or 8 of the Schedule of Perils, unless brought within two years after the amount of such loss is made certain by judgment against the insured after final determination of the litigation. . . ."

The stipulation of facts shows that when the original action was brought against Phillips-Buttorff Manufacturing Company and McQueen, the attorneys for the insurance company undertook and carried on the defense of the suit, with a reservation as between the insurance company and McQueen that by so doing it made no concession of liability to him. This reservation was not made known to McAlexander, who never knew of the arrangement, as to the use of the car, between Phillips-

Buttorff Manufacturing Company and McQueen, until the trial in the circuit court. The accident was, however, promptly reported by Phillips-Buttorff Manufacturing Company to the defendant on its occurrence.

An examination of the pleadings reveals that the question of lack of notice was not raised in the case. It was not enbodied in any of the defendant's three special pleas, and it could not be raised under the only other plea of the defendant, which was that of the general issue.

Other assignments of error are but restatements in varying form of the matters heretofore discussed, and do not, therefore, require separate consideration.

It results that the judgment of the court below is affirmed, at the cost of the plaintiff in error.