A. J. and RODNEY BLAKE v. A. B. and M. B. SKELTON.

Middle Section.   May 14, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

1. **Highways. Opening a new road to take the place of an old road does not as a matter of law vacate the old road.**
Where a new road was constructed to take the place of a part of an old road and there was nothing further done to vacate the old road, held that the building of a new way between certain points on the line of an old way is not necessarily an abandonment and discontinuance of the old way; the question is one of intention.

2. **Highways. Discontinuance. Where the statute prescribed a method, the highway may be discontinued only in the manner so prescribed.**
Chapter 19 of the Private Acts of 1921, section 6, provides the method for closing a road and a road can not be vacated or abandoned unless the statute is followed.

3. **Easements. An easement for a road is a vested right which can not be taken without compensation.**
Where complainants for a great number of years had used a road and later a new road was built, held that they still had an easement to use the old road, the same having not been vacated.

4. **Highways. Complainants held entitled to use an old road where a new road was not an adequate substitute.**
In an action for an injunction restraining defendants from preventing complainants from using a road where the evidence showed that a new road had been built to take the place of the old road, but that complainants did not have an adequate approach to the new road, held that they were entitled to use the old road.

5. **Injunction. Highways. Evidence. Complainants held entitled to an injunction to restrain defendant from keeping them from using the road.**
Where a new road had been built to take the place of an old road, but complainants could not reach the new road because of a steep approach and defendants had prevented them using the old road, held that they were entitled to an injunction to restrain defendants from interfering with their use of the old road.

Appeal from Chancery Court, Houston County; Hon. J. W. Stout, Chancellor.

Affirmed.

J. M. Spencer, of Erin, for appellant.

H. N. Leech, of Clarksville, for appellee.

FAW, P. J.   The subject-matter of this litigation is a road. The complainants, A. J. Blake and Rodney Blake have their residence upon a farm in the 7th civil district of Houston county, which farm they have owned and occupied for more than forty-five years. The defendants, A. B. Skelton and Mrs. M. B. Skelton, have owned and occupied the farm situated immediately north of and adjoin-

ing the farm of complainants for approximately the same length of time. Yellow creek flows northward through the farm of complainants and then through the farm of the defendants. The residence of the complainants is on the east side of Yellow creek, and the residence of the defendants is on the west side of Yellow creek. A public road leading from Clarksville in Montgomery county, through Houston county, to Waverly in Humphreys county, passes over the aforesaid farms of complainants and defendants. This road has been a public highway for many years—indisputably more than forty-five years, and probably twice that length of time, —and prior to the year of 1921 it crossed from the west to the east side of Yellow creek near the southern boundary of complainants' farm, at a ford known as the "upper ford," and followed a course near to, and approximately parallel with, Yellow creek, northward across complainants' farm, passing immediately in front of complainants' dooryard, and thence across defendants' farm, crossing from the east back to the west side of Yellow creek, near the northern boundary line of defendants' farm, at a ford known as the "lower ford."

In the year 1921 a road was built and opened for public travel over a new route from a point in the old road a short distance south of the upper ford, along the west side of Yellow creek for a distance of about a mile and a quarter, to a junction with the old road at a point a short distance north of the lower ford. This stretch of road built in 1921 is known in the record as the "new road," and that part of the road as formerly located which lies between the termini of the new road is known in the record as the "old road."

The complainants allege in their bill (filed November 11, 1924) that, as a result of high waters in the creek, the lower ford has washed out and is almost impassable for vehicles; that the old road on defendants' land is otherwise in need of repair; that defendants are denying the right of the complainants to repair said road and will not permit either the complainants or the public road overseer of the district to repair the lower ford or work said old road on defendants' land; that complainant Rodney Blake undertook to repair the lower ford so as to make it passable, but defendant A. B. Skelton "appeared on the scene," objected to the complainant repairing the ford, "raised a row, and came very near causing a serious difficulty," and that since that time the defendants have objected to the road overseer doing necessary repair work, and that, as a result of such objections of defendants, the road has not been worked and repaired and is well-nigh impassable, and will, if not repaired, soon become entirely unfit for travel and use as a road.

Complainants further allege that that part of the new road located on their land is built along the side of a steep bluff and for that reason there is no practicable or feasible route by which they can reach the new road over their own land; that in order to reach their mail box and the nearest store and church it is necessary, and the most adequate and convenient route, to travel the old road and cross the lower ford; that the old road is the only adequate and convenient outlet from their premises, and the only adequate and convenient way of ingress and egress to and from their home and farm.

Complainants assert, in substance, that the old road has never been closed or discontinued by any competent legal authority or by any procedure known to the law, and is therefore still a public road; that, if they are mistaken in their assertion that the old road has never been discontinued as a public road, nevertheless, by virtue of the facts aforestated, they acquired and have a right of way for travel over the old road, as an easement appurtenant to their land, and therefore have a legal right to keep it open and to work and repair it without interference from the defendants; that if the court should be of the opinion that complainants are not entitled under the law to relief upon either of the aforesaid theories, then, as a second alternative, they are entitled, under the facts, to have a road opened for their benefit in the manner provided by chapter 75 of the Public Acts of 1921. The bill contains prayers appropriate to the foregoing averments.

The complainants also pray that an injunction issue and be served upon the defendants enjoining them from interfering with the complainants in repairing said ford and road, and that defendants be further enjoined from interfering with the county road officials working said road and ford and from interfering with the complainant Rodney Blake as an agent or overseer under order of the county court.

Pursuant to a fiat granted, on preliminary application, by the Judge of the 9th Judicial Circuit, a temporary injunction issued as prayed in the bill.

The defendants filed a demurrer and answer, the demurrer being "incorporated with the answer," but as the demurrer was overruled and no error is assigned upon the action of the court in that respect, it is unnecessary to state the grounds of the demurrer.

The defendants answered the bill and in their answer they admit that they have denied, and are denying, the right of the complainants or the road overseer to work the old road or repair the lower ford. Defendants say, in their answer, that the old road is not fenced, and may never be, and "as long as it is not needed and remains unenclosed, they have no objection to any neighbor

passing over it along the way of the old road bed and across said ford," but defendants deny that it is a public road or that complainants have an easement therein, and they deny that complainants have a legal right to travel said road or make repairs thereon without permission of defendants.

The defenses interposed by the answer are, in substance, (1) that the construction and opening of the new road operated, in fact and in law, as an abandonment and discontinuance of the old road; (2) that before the controversy arose between complainants and defendants with respect to the repair of the lower ford, the old road was "abandoned and discontinued" as a public road by official action of the county court of Houston county; (3) that it is not true that the old road is the only outlet from the home of the complainants, and it is not true that if complainants are not permitted to keep the old road open through the land of the defendants, "they are cut off from any public road," but that, to the contrary, complainants have an outlet to the new road over a right of way across defendants' land (for a distance of seventy-three yards) which defendants gave to complainants at the time the new road was built.

In this court it is insisted on behalf of defendants that the old road was discontinued by official action of the Tennessee State Highway Commission in the exercise of its jurisdiction over the State Highway System conferred by chapter 149 of the Public Acts for the year of 1919.

The complainants insist that the contention just stated was not made by the defendants in the chancery court, either in their answer or otherwise. The state of the record with respect to this matter will be considered later in this opinion.

Considerable proof, in the form of depositions and exhibits, was taken and filed on behalf of the parties, respectively, and the case was finally heard by the Chancellor and a decree entered as follows:

"This cause was heard on the motion to dissolve the injunction heretofore granted, the demurrer to the bill of complaint, and upon the original bill and answer and the proof in the cause, and on consideration thereof the court overrules the motion to dissolve the injunction, and finds that the demurrer is not well taken, and therefore overrules the said demurrer. The court finds from the proof that the road in controversy, on the east side of Yellow creek, has been a public highway for more than forty years, and that during that time and up to the present time the complainants have used said road as a public road and as a means of ingress and egress to and from their farm and dwelling. Complainants have no other adequate or convenient way to and from their farm and dwelling. That said road has never been closed or

abandoned as a public road, that complainants have an easement in the right of way over said road. That said easement and right of the complainants was not annulled or destroyed by the State and county highway built on the west side of said creek; that complainants have the right to work said road and the creek ford in controversy so as to keep said road and ford in reasonably good and passable condition.

"It is accordingly ordered, adjudged and decreed. It is further adjudged that the injunction, heretofore granted in the cause, be and is hereby made perpetual, and that the complainants recover of the defendants the cost of this cause, for which execution may issue.

"The defendants except to the action of the court, in making the foregoing decree, and pray an appeal to the next term of the Court of Civil Appeals at Nashville for the middle division of the State of Tennessee, and said prayer for an appeal is by the court allowed and granted on giving of the bond therefor as required by law or statutes.

"The bond so required was presented in open court, with said prayer for the appeal prayed and granted, signed by the defendants and approved security and is by the court approved and the appeal perfected."

The foregoing decree was made and entered subsequent to the enactment of chapter 100 of the Acts of 1925 creating the present "Court of Appeals" in lieu of the "Court of Civil Appeals," and the insertion of the word "Civil" in the style of the court to which the appeal was prayed and granted was manifestly a mere clerical error, and we have treated it as an appeal to the "Court of Appeals."

The findings of the Chancellor as above quoted, and his decree based thereon, are challenged as erroneous by appropriate assignments of error filed by the appellants in this court.

It appears from the record, and is undisputed, that the road in controversy had been a public highway, and as such had been used by complainants as a way of ingress and egress to and from their home and farm for more than forty years at the time the new road was built.

The old road (referring to that part of the said former Clarksville and Waverly road which is in controversy in this case) has never been physically closed and is used by the complainants and by some other members of the traveling public. Some of the witnesses testified that they used the old road for travel in horse-drawn vehicles, mainly because the new road is on the side of a bluff and narrow in places, and they do not like to meet automobiles on the bluff road.

But if the complainants have no legal right to use the old road over defendants' land, the defendants, as the owners of the land, may at any time withdraw their permission; hence, a permissive use of the old road does not afford complainants the measure of relief to which they are entitled if, as a matter of law, the old road has not been vacated and discontinued as a public road, or if complainants have a right of way for travel over the old road as an easement appurtenant to their land. Morgan County v. Goans, 138 Tenn., 381, 384, 198 S. W., 69.

Moreover, the right of travel over the old road without the right to keep it in repair would be without substance.

The new road was built in the year of 1921 by A. B. Skelton (one of the defendants herein), S. W. Lashlee and J. S. Edwards as "Road Commissioners for Houston county," pursuant to a written contract of date May 2, 1921, between the Department of Highways of the State of Tennessee (usually described as the State Highway Commission) and said road commissioners of Houston county, by the terms of which contract the funds available for Houston county under the provisions of chapter 149 of the Public Acts of 1919 were to be expended upon certain designated roads in Houston county, and among others a road described in the contract as "from Montgomery county line to—eight miles to Dickson county line," which included the road in controversy.

The aforesaid Act of 1919, chapter 149, created a State Highway Department consisting of three commissioners, and provided a system for the registration and licensing of automobiles and other motor vehicles, and the collection of registration and license fees, and the revenues to be derived therefrom were appropriated and set aside as highway funds available for the purposes of the Act, and to be expended under the direction of the State Highway Commission for the construction or reconstruction and for the maintenance of public roads and bridges in the respective counties of the State.

It was further provided in said Act (by section 21) that "all of the funds derived under this Act shall be used by said State Highway Commission in the maintenance of said department and in carrying out the provisions of this Act relating to the construction and maintenance of said highways in the several counties of the State. Provided, however, that the net funds realized from the taxes and privileges collected under this Act which shall be distributed among all the counties of this State in the following manner and proportions:

"Half of the net funds derived by virtue of the auto tax levied in this bill shall be distributed equally among all of the counties of the State, the other and remaining half of said net funds shall

be expended upon such State Highways as may be designated by the said highway commission so as to secure as far as practicable the construction and maintenance of other routes or main lines of State Highways.

"The State Highway Commission shall also have the right to designate the roads in the several counties in which the fund to be distributed to the counties as herein provided shall be expended, the character of roads to be constructed, and the manner in which the expenditure for construction or maintenance shall be made."

The section from which we have just quoted contains the further provision that "nothing in this act shall be construed as changing or modifying the provisions of chapter 74 of the Public Acts of 1917, the same being entitled, 'An Act to provide revenue for use in road building in the State by the State Highway Department acting in conjunction with the secretary of agriculture of the United States and in conformity to an Act of the 64th Congress, approved July 11, 1916, entitled an act to provide that the United States shall aid the States in the construction of rural post roads and for other purposes; to provide for the expenditure of all funds raised by the State of Tennessee, to supplement said Federal appropriation and other funds raised under this act, to confer upon the State Highway Department certain powers with respect to the distribution and expenditure of said entire funds, and to impose certain duties and place certain restrictions upon said State Highway Department with respect thereto and to provide the means and instrumentalities for laying out and carrying on the work of road building in this State as contemplated by said Federal statute; and to penalize violations of this act,' and it is hereby declared to be the intent of the legislature that the funds collected under the provisions of said chapter 74, shall be distributed and used as therein directed."

The new road (a mile and a quarter in length) involved in this case was built by the said road commissioners in Houston county, at a cost of $4775, pursuant to the aforementioned contract between said road commissioners of Houston county and the State Highway Commission. Manifestly this road was built with funds apportioned to Houston county under the provisions of section 21 of the Act of 1919 (chapter 149), supra, and did not become a "State Aid Road" and a part of the "designated system of State Highways" contemplated by the Act of 1917, chapter 74.

In their assignments of error and brief in this court the defendants proceed on the assumption that the State Highway Commission, by its action aforestated, incorporated the old county highway (meaning that part of the old Clarksville and Waverly road located in Houston county) in the State Highway System; but

in their answer below, the defendants do not, in express terms, assert that the road in controversy (either the new road or the old road) was incorporated in the State Highway System. Touching this point the answer contains only a brief paragraph as follows:

"In 1919 defendant A. B. Skelton and Dr. J. S. Edwards and S. W. Lashlee, were elected road commissioners by the county court of Houston County, Tennessee, to supervise and handle the automobile fund, distributed to the county, under chapter 149, Public Acts of Tennessee, 1919, page 546. Soon thereafter, they had the new road in question surveyed by D. T. Foust, a surveyor, submitted this action to the Highway Commission of the State, and the same was approved by the commission, and the road built at a cost of $4775."

There is no averment in the defendants' answer (and no evidence in the record) that the State Highway Commission ever took any action looking to the discontinuance of the old road in controversy, but there is an averment in the answer that the old road was discontinued by official action of the county court of Houston county. On this latter point the answer says:

"Respondents say that the old road mentioned therein has, for the time stated, at least, been a public road known as the Yellow Creek road leading from Clarksville, Montgomery county, to Waverly, in Humphreys county, but as to the portion of same in controversy here, it was abandoned and discontinued by the official action of the county court taken prior to the alleged action of the complainants at the January term, 1922, in the form of a petition, signed and supported by affidavits, and has never since been opened up as a public road."

We think it evident from the testimony of the defendant A. B. Skelton that he did not regard the new road, when completed, as a "State Highway," and that it was considered and treated by the county court and other officials of Houston county as one of the public roads of Houston county, to be maintained by the county. We quote from defendant Skelton's deposition as follows:

"Q. State your age, residence and occupation? A. Age 46, residence 7th civil district, Houston county, farming.

"Q. You and your mother are the defendants in this suit? A. Yes, sir.

"Q. How long have you lived there in the community where you live? A. All my life.

"Q. This changed portion of the road along the bluff there, is just a change in the old Clarksville and Waverly road at that point, is it? A. Yes, sir.

"Q. What was the occasion for bringing about that change? A. Well, in 1919, I think it was in 1919, the legislature passed an act that each county in the State would get half, half of the automobile funds, and this road had needed being changed for a number of years, and in fact this was the first opportunity to get any funds available to make the change.

"Q. Why was a change needed there, just state the physical conditions. A. Well, during the winter season the water came up and you can't drive an automobile on account of the high water, very well on account of. the two fords to cross.

"Q. State whether this is a violent creek with dangerous fords at that point? A. Yes, sir, very dangerous, when the creek is up, part of the road ran up and down the creek.

"Q. State whether there has been a demand by the public for a road at that point many years? A. Yes, sir, been talked for a number of years.

"Q. But your county had never seen fit to make the necessary expense? A. No sir.

"Q. You were one of the road commissioners for Houston county, at the time the negotiations were begun, and at the time the contract was made with the State Highway Department with reference to this change? A. Yes, sir.

"Q. You had negotiations about it for some time before you entered into a contract, did you? A. Yes, sir.

"Q. Well, prior to entering into this contract, state whether the road commissioners of the county, you one of them, had a survey made as to bring the attention of the State Highway Commission to the change that was made? A. Yes, sir, we had it surveyed.

"Q. Who made the survey. A. D. T. Foust.

"Q. State whether he reported that survey to the attention of the highway department, and entered into a contract about this matter? A. Well, we commissioners went over to Nashville in the spring, I think it was of 1920, and designated those roads that we wanted to expend this money on, and made this contract with the highway department for that purpose.

"Q. Was that after the survey? A. That was after the survey.

"Q. The highway department had Mr. Foust survey, did it? A. No, sir, they didn't have it that day. We told them of the survey.

"Q. He made that survey sometime in 1920? A. Well, I don't remember whether it was in 1920, I wouldn't positively say,—

"Q. Anyhow you never entered into a contract until later on? A. No, sir.

"Q.  Who were the other road commissioners of your county when these negotiations were had and when you finally made the contract? A. Dr. J. S. Edwards at Erin and Mr. Lashlee at McKinnon.

"Q. Please state if you have a copy of the contract between the department of highways and with you commissioners, and if so, state the date of it and make it Exhibit No. 1 to your deposition. A. Yes, sir, this is the contract made, May 2, 1921, I will make it Exhibit No. 1.

"Q. Now this road is one of the roads referred to in this contract in which the highway department joined in with the county as it states, which one did you call it? A. Road out from Montgomery county line to Dickson county line.

"Q. From what point to what point? A. From Montgomery county line to Dickson county line.

"Q. That is the old Clarksville and Waverly road, is it? A. Yes, sir.

"Q. These others they undertake to contract in your county are on different roads? A. Yes, sir, they were in Dr. Edwards and Mr. Lashlee's province to look after.

"Q. State if you made a similar contract with reference to other roads with the highway department later on, and if so, give the date of that contract and make it Exhibit No. 2 to your deposition? A. Yes, sir, this is the contract, April 10, 1922, leading from Erin to Dickson county line.

"Q. That concerns a different public road from this? A. Yes, sir.

"Q. But the same kind of contract? A. Makes connection just above that.

"Q. It concerns several other roads taken over by the highway department? A. Yes, sir.

"Q. They appear on the face of the contract themselves? A. Yes, sir.

"Q. Now this work was the old Clarksville and Waverly road covered by this first contract, takes in this change there, from along the creek to the bluff on the west side? A. Yes, sir.

"Q. In pursuance of this contract this change was made? A. Yes, sir.

"Q. At how much cost to your county? A. $4775.

"Q. The commission used the automobile fund of the county to defray that expense? A. Yes, sir."

Defendant A. B. Skelton filed as an exhibit to his deposition, without objection from the complainants, a certified copy of certain proceedings of the county court of Houston county, and testified that he could find no record of any other proceedings in the

county court with reference to the matters in controversy in this case. The county court record thus exhibited seems to be treated by both parties as the entire record of the county court on the subject. It is as follows:

"January Term, January 2, 1922.

"Monday morning, January 2, 1922, the Quarterly Court of Houston County met in regular session, pursuant to court in course, and was duly opened according to law by Sheriff W. C. Brooks and there being a quorum present the following proceedings were had and entered of record, to-wit:

"On motion S. W. Lashlee was elected Highway Commissioner in District No. 1 to handle auto money.

"On motion Dr. J. S. Edwards was elected Highway Commissioner for District No. 4.

"On motion A. B. Skelton was elected Highway Commissioner for District No. 7.

"On motion Rodney Blake was allowed his and his hands road time living on his farm to keep up the creek road running by his house so as to intersect the bluff road above and below Blake's house, and that the creek road be kept open.

"April Term of County Court 1922.

"Monday morning, April 3, 1922.

"The Quarterly Court met in regular session pursuant to Court in course with the following Magistrates present and J. R. Lee, Chairman Protem the Chair and the following proceedings were had: E. P. Simpkins, G. W. Lockhart, C. D. French, J. R. Lee, T. G. Keenan, J. W. Reynolds, W. E. Ross, Walter Sugg, W. H. Rice, W. W. Patterson, G. P. Parchman, and K. L. Hall.

"On motion the overseer of District No. 7, Section No. 1, be ordered to work and keep up the old road running by A. J. and Rodney Blake's.

"On motion the order authorizing the overseer in District No. 7, Section No. 1, was rescinded and Rodney Blake allowed his and his hands time as was passed at the January Term, 1922.

"July Term of County Court 1922.

"Monday morning, July 3rd, 1922. The Quarterly Court met in regular session, pursuant to court in course and there being a quorum present and was duly opened by Sheriff W. C. Brooks with J. W. Robertson in the Chair when the following proceedings were had, to-wit: B. A. Hooper, E. P. Simpkins, G. W. Lockhart, G. T. Buckhanan, C. D. French, J. W. Reynolds, K. L. Hall, W. W. Patterson, and G. P. Parchman.

"On motion the overseer in District No. 7, Section No. 1, be ordered to work the road running by Mr. Rodney Blake's house as

other roads.   On motion I. R. Bledsoe offered his resignation as overseer and same was accepted.

"April Term of County Court 1923.

"April 2nd, 1923, be it remembered that the Quarterly Court for Houston County, met pursuant to adjournment and was opened in due form of law by W. C. Brooks, Sheriff, with the Honorable J. R. Lee, Chairman, present and presiding, when the following proceedings were had, to-wit:

"On motion A. B. Skelton have the road fixed in District No. 7, by using all free labor available and if necessary he be allowed funds due that section to complete the road, said road known as the hill and the Reddick hill.

"October Term of County Court 1923.

"Be it remembered that the October Quarterly Court met pursuant to adjournment and was opened in due form of law by W. C. Brooks, Sheriff, with the Honorable J. R. Lee, Chairman, present and presiding when the following proceedings were had, to-wit:

"On motion the new road built by A. B. Skelton along the Blake Bluff be declared and accepted as a County road and be worked as such and the old creek road be thrown out as a County road but not to be stopped up.

"January Term of County Court 1924.

"Be it remembered that the Houston County Quarterly Court was called to order on January 7, 1924, by W. C. Brooks, Sheriff, with the Honorable J. R. Lee, Chairman, present and presiding when the following proceedings were had, to-wit:

"Invocation prayer by Rev. J. T. Cotton.

"On motion Rodney Blake be allowed to work his and his men's time on the old road along his place.

"On motion the following overseers are elected for 1924.   A. B. Skelton to work the Ellis Mill Section.

"January Term of County Court 1925.

"Be it remembered that the Quarterly Court for Houston County was opened in due form of law by R. H. Fremce, Sheriff, with the Honorable J. R. Lee, Chairman, present and presiding when the following proceedings were had, to-wit:

"On motion A. B. Skelton was elected road overseer by acclamation.

"On motion Court adjourned until Court in course.

"Signed.

"J. R. Lee
"N. E. Christianson
"A. F. Weaver
"Ed Simpkins
"R. R. Spurgeon

"R. C. Mobley
"A. L. McMillan
"C. N. Parker
"Ed Ross."
"D. T. Walker
"W. H. Rice
"W. W. Patterson
"T. L. Dreaden
"J. W. Robertson
"V. A. Rye
    "G. P. Parchman."

It also appears from the testimony of Mr. Skelton that the minutes of the April Term, 1923, included in the above-quoted county court record, have no bearing on the present controversy—that the road "known as the hill and the Reddick hill" is not a part of the road involved in this case, but is situated in a different locality.

We cannot agree to the contention of defendants that the construction, opening and acceptance of the new road, as a public road, necessarily, and as a matter of law, operated as an abandonment and discontinuance of that part of the old road lying between the termini of the new road. The building of a new way between certain points on the line of an old way is not necessarily an abandonment and discontinuance of the old way; the question is one of intention. See Note in 5 L. R. A., p. 652 and cases there cited. This principle was recognized in the case of Young v. State, 9 Yerg. 390.

And in such case an intention to discontinue the old road, where such discontinuance would prejudice vested rights of abutting property owners, is not effective in the absence of appropriate proceedings in which the interested parties are afforded an opportunity to be heard.

Once established, a highway does not cease to be such until it is vacated and discontinued in due course of law. Elkins v. State, 2 Humph., 542; Gilson v. State, 5 Lea, 161; Note 26 L. R. A., 823, 827; Driggs v. Phillips, 103 N. Y., 77.

The location or route of a highway can be changed only by competent authority and in the manner prescribed by law. The person dedicating it and those claiming under him have no right to make such a change. Cole v. Sprowl, 35 Me., 161, 56 Am. D. 696; Miller v. Corinna, 42 Minn. 39; People ex rel. Hart v. Marin County (Cal.), 26 L. R. A. 659, 663; Elkins v. State, supra.

Where the statute prescribes a method, the highway may be discontinued only in the manner so prescribed. Moffitt v. Brainard (Iowa), 26 L. R. A., 821, and Note to that case; Hill v. Hoff-

man (Tenn. Chy. App.), 58 S. W. 929, 932. And the burden of showing a discontinuance, vacation or abandonment is on the party who asserts it. Town of Basic City v. Bell, Anno. Cas. 1914A, p. 1031.

In their brief, defendants rely on the case of State Highway Department v. Mitchell's Heirs, 142 Tenn., 58, 216 S. W., 336, as supporting their contention that the opening of the new road ipso facto discontinued the old road. It was held in that case that the State Highway Commission had authority to alter the course of a road, under construction as a State Highway, by a deviation of about one-third of a mile from the former location of a public road which had been adopted as a State and Federal Aid Highway —the deviation being thought necessary to make the road conform to the Federal requirements; but the discontinuance of the old road was not involved in the case or considered by the court, and no opinion was expressed on that subject.

In the present case, the new road was completed and opened for travel in the latter part of 1921, not later than December first, and, as we have seen, the county court of Houston county, at its next ensuing term in January 1922, ordered that that part of the old road here in controversy "be kept open," and provided for its repair by allowing Rodney Blake (complainant) and the "hands" living on his farm to work out their "road time" in the upkeep of said road. Obviously there was no intention on the part of the county court at that time to abandon, vacate or discontinue the old road.

It is provided by chapter 19 of the Private Acts of 1921 (in section 6) that "all applications, to open, change, close, or restore to public use any and all public roads in said county, shall be made by written petition to the overseer of the section in which the road is located, and if said road is intended to be located in more than one section, then the petition shall be made to the overseer of all the sections of road, or roads, interested and they shall act jointly.

"The road overseer within ten days after the application has been filed with him, shall notify the person first named on the petition, of the date at which he will be present, at the beginning point mentioned in the petition, to act on the application.

"Five days written notice of the date and beginning point shall be given by the petitioners, to all persons owning or controlling lands to be affected by the proposed change; the road overseer shall attend at the appointed time and place, and if the proper notice to interested parties has been given, shall act upon the applications, assess damages if in his judgment there should be any, and report his action to the chairman of the county court. With

his report he shall file the original petition, a notice to land owners, and the names of material witnesses. The chairman of the county court shall consider the whole matter, and make such orders as to the opening, changing, closing, or restoring to the public the proposed road, as the court may deem proper. Any interested party may appeal as heretofore, provided such appeal be perfected before the clerk of the county court within ten days.''

There was no attempt to ''close'' the old road in the manner prescribed by the above quoted statute, and, in our opinion, it has not been discontinued, vacated or abandoned, and is yet a public road.

Moreover, the easement which complainants acquired in the old road is appurtenant to their land, and is a vested right of which they cannot be deprived without compensation. Morgan County v. Goans, supra, p. 384; Yates and Donelson Co. v. Memphis, 137 Tenn., 642, 645, 194 S. W., 903; Anderson v. Turbeville, 6 Cold., 150, 157-8; Hill v. Hoffman, supra, p. 932.

The case of Hill v. Hoffman, supra, largely determines the questions of law which we have hereinbefore discussed. The opinion of the Court of Chancery Appeals in that case (which was prepared by Mr. Justice Neil) was affirmed orally by the Supreme Court. The several rulings of the court in Hill v. Hoffman are set forth in the headnotes to that case as follows:

''1. Where an obstruction of a public road compelled abutting owners to travel much further in reaching certain necessary points than previously, they might maintain a bill in equity to enjoin the obstruction.

''2. Where a road was used by the public for sixty years under a claim of right, and there was testimony that it had been worked by the county, such facts constituted a dedication and acceptance by the public.

''3. That a public road was obstructed for two years did not cause it to lose its character as a public road.

''4. Under Shannon's Code, p. 1621, declaring that no road shall be closed without five days notice to interested parties of the time the road is to be closed, and that landowners on the highways shall be deemed interested parties, where an attempt was made to close a road, and no notice was served on certain abutting owners, the action of the highway commissioners in closing same was void.

''5. Where a highway commissioner's attempt to close a road was void for want of notice to the parties interested as required by statute, a bill might be maintained to restrain an obstruction established on such attempted closing.

''6. Since an abutting owner of a public road is entitled to ingress and egress to and from his premises, a public road cannot

be closed in such manner as to nullify the abutting owner's easement.

"7.   Where a bill was filed to restrain the obstruction of a public road on the ground that it was a public highway never lawfully closed, and an amendment claimed that, whether the road had been legally closed or not, complainants had an easement entitling them to ingress and egress from their premises on the road, such amendment was not improper, there being no inconsistency between it and the bill.

"8.   Where a bill was filed to restrain an obstruction to a public road on the ground that it had not been lawfully closed, an exception to the bill on the ground that an abutting owner was not a party to the bill was properly overruled.

"9.   Those whose lands abutted a highway, and were affected by an unlawful closing thereof, might maintain a suit in equity to restrain the closing, though their lands did not abut the highway at the exact point of the obstruction.

"10.   Where a bill by abutting owners of a highway to restrain an obstruction thereof alleged that the highway was unlawfully obstructed, in that it had never been legally closed, and by an amended bill set up their private right of easement of ingress and egress to and from their premises, they were not estopped to set up by a subsequent amendment their right to open the road."

The complainants in the instant case actively favored the construction of the new road and donated the right of way over their land, and defendant A. B. Skelton agreed (orally) with complainant Rodney Blake that complainants might have a permanent way across the defendants' land to reach the new road at a point approximately midway between the termini of the new road, and defendant A. B. Skelton (as road commissioner) further agreed that, in the course of the construction of the new road, an approach would be built by which the new road could be reached from the east side at the point named.   This approach was built as agreed (according to specifications furnished by complainant Rodney Blake) and there is an old ford (a neighborhood passway heretofore used by permission of land owners and not a public road) by which complainants can reach the new road over the "approach" above-mentioned, which, as stated, is on the land of the defendants; but this "approach" is quite steep and it is impossible for a team to draw anything like a full load up this approach to the new road.

But there was no suggestion to complainants by defendants or anyone else, prior to the opening of the new road for travel, that the old road would be discontinued or abandoned, or that the de-

fendants would claim that it had been abandoned and discontinued by the construction and opening of the new road.

. The distance from complainants' residence to their mail box is twenty poles greater by the new road than by the old road, and the distance to the mill and store is forty-six poles greater by the new road than by the old road.

The old road is comparatively level and when the fords are kept in repair a much larger "load" can be hauled in wagons or other vehicles to or from the farm of complainants, for the reason that the aforesaid "approach" to the new road from complainants place is "very steep."

We think it is clear from the evidence that the inlet and outlet to and from complainants home and farm by way of the aforesaid "approach" to the new road is not an adequate substitute for the old road, and the obstruction of the old road would inflict upon complainants an injury peculiar to themselves and different from that suffered by the general public.

For the reasons stated, we concur in the findings of the Chancellor. The assignments of error are therefore overruled and the decree of the Chancellor is affirmed, and a decree will be entered accordingly. The costs of the appeal will be adjudged against the defendants and the surety on their appeal bond.

DeWitt and Crownover, JJ., concur.