STEWART *et al. v.* SULLIVAN COUNTY *et al.*

(*Knoxville,* September Term, 1953.)

Opinion filed December 11, 1953.

Petition to Rehear denied February 11, 1954.

GEORGE L. McINTYRE, of Bristol, JOSEPH C. SWIDLER, CHAS. J. McCARTHY and LEE C. WHITE, all of Knoxville, for appellants.

CALDWELL & BROWN, of Bristol, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents a bill filed by 44 citizens and property owners of Sullivan County, against that County and the Tennessee Valley Authority, on account of the abandonment and obstruction of a county highway and bridge as a result of the building of the T. V. A. South Holston Dam and Reservoir. The defendants filed separate demurrers to the bill, which were overruled by the Chancellor, who permitted this discretionary appeal.

After the filing of the bill, the Tennessee Valley Authority, with the concurrence of Sullivan County, filed petition for removal to the United States District Court for the Eastern District of Tennessee, which petition was disallowed and the cause remanded to the Chancery Court of Sullivan County, because the Federal Court lacked original jurisdiction under 28 U. S. C. Sec. 1349, and removal jurisdiction under 28 U. S. C. Sec. 1441. According to the order of removal, the learned Federal Judge found as follows:

"It further appearing that the suit arose between residents of Tennessee and Sullivan County, one of the 95 counties of Tennessee, because the county had undertaken to contract away its obligation, if any, under the Private Act (Ch. 201, Private Acts of 1929) by authorizing T. V. A., to close the aforesaid road; that no separate controversy exists between T. V. A., and respondents; that the suit is essentially against Sullivan County by a number of its citizens; that the suit in the Chancery Court was one in the nature of an appeal for the reason that the respondents had first petitioned the County Judge of Sullivan County to apply the aforesaid Private Act, had been refused

that relief and had thereafter sought the same relief in the nature of a mandamus from the Chancery Court of Sullivan County.''

We are in full accord with this analysis of the nature and scope of this litigation by the Federal Judge, and the demurrers and briefs of the defendants would have been greatly clarified and simplified if the validity of the order had been recognized.

The real party defendant in this cause is Sullivan County, or as the Federal Judge put it, ''The suit is essentially against Sullivan County by a number of its citizens.'' The cause of action arises from the abandonment and closing to public use of a county bridge and highway. The defendant County, itself, did not close the bridge and highway, but it permitted defendant T. V. A., by the construction of a dam, to flood the highway and so effectively close it to use by the public.

Then the county, instead of insisting that the obstruction be removed from its bridge and highway, entered into a contract of indemnity with T. V. A., which contract is made an exhibit to the original bill, whereby the County agreed to the closing of the bridge and highway, and on its part, T. V. A. undertook (1) to furnish substitute roads for those flooded, and (2) to indemnify the County against all claims for damages on account of the closing and abandonment of the bridge and highway. The liability of T. V. A. in this cause, therefore, is secondary to the liability of the County, and arises from the voluntary contract which T. V. A. made with the County on April 4, 1949. The part of the contract pertinent to this suit is paragraph 8 as follows:

''8. Anything in section 7 or elsewhere in this agreement to the contrary notwithstanding, the County does not release or waive or agree not to en-

force any claim, demand, or 'action over' which it may now or hereafter have against the Authority or the United States, and which is based upon an obligation or liability which the County may have or incur to any member of the traveling public or to any landowner deprived of access to land owned by him in the County, where such obligation or liability on the part of the County arises out of the inundation, flooding, closing, or other impairment, as the result of the construction, maintenance, and operation of South Holston Dam or South Holston Reservoir, of any of the public and/or county highways, roads, or bridges within the County, the replacement, relocation, reconstruction, or protection of which is not provided for by this agreement; and the Authority hereby expressly covenants and agrees to indemnify the County against and save it harmless from any such obligation or liability; provided however, that whenever any such obligation or liability exists or is alleged to exist on the part of the County in favor of any landowner or member of the traveling public, the County shall not, except pursuant to a judicial judgment or decree, pay, compromise, settle, or otherwise dispose of such obligation or liability, or any claim, demand, suit, or action based thereon, without the written consent of the Authority, and provided further, that the Authority shall at all times have and exercise full control over the defense, settlement, and disposition of all claims, demands, suit, and actions filed with or against the county in respect of any such obligation or liability, and may compromise, settle, or otherwise dispose of the same either by constructing the road or roads necessary to extinguish or abate any such claim, demand, action, or suit, which road or roads

shall then be regarded as constructed under section 3 hereof, or by any other method or procedure the Authority may see fit to adopt in its sole discretion.''

The County could not, of course, by contract with T. V. A. escape its liability to the complainants, but the foregoing excerpt from the contract makes clear why it was necessary that T. V. A. should be a party defendant in this cause, and it is elementary law in Tennessee that the beneficiary of a contract made by third parties, may sue in his own right for its breach. *Christian* v. *John,* 111 Tenn. 92, 103, 76 S. W. 906; *Associated Ind. Corp.* v. *McAlexander,* 168 Tenn. 424, 79 S. W. (2d) 556; *Fulmer* v. *Goldfarb,* 171 Tenn. 218, 101 S. W. (2d) 1108.

In his decree overruling the demurrers and permitting the appeal, the learned Chancellor held and found as follows:

''It is therefore ordered, adjudged, decreed and declared by the Court that by the contract of April 4, 1949, between the defendants Sullivan County, Tennessee, and the Tennessee Valley Authority, the defendant Tennessee Valley Authority agreed to assume full liability for and to indemnify the defendant Sullivan County against and save it harmless from any obligation or liability to any member of the traveling public or to any landowner deprived of access to land owned by him in the county where such obligation or liability on the part of the county arises out of the inundation, flooding, closing or other impairment as a result of the construction, maintenance, and operation of South Holston Dam and Reservoir of any of the public and/or county highways, roads, or bridges within the county, the replacement, relocation, reconstruction or protection of which was not provided for by the agreement and that by entering

into the aforesaid contract, the defendant Tennessee Valley Authority waived any defense against such claims which it might have had in the absence of said contract.''

As to their special damage, the complainants make these allegations in their original bill, that prior to November 1, 1950, and the construction of the dam by T. V. A., complainants had free access to and from U. S. Highway No. 421 over a County highway leading from their properties to said Federal highway. That this County highway had originally been constructed by the complainants or their predecessors in title, and after its construction by the private property owners, maintenance and upkeep of the highway had been taken over by the county and the road made a part of the County highway system, the bill alleges:

''A number of your complainants and their predecessors in title furnished material and labor in the construction of the road and were vitally interested in same as it afforded them an outlet into Holston Valley and from there leading into Bristol. Their children were educated in the schools of Holston Valley and a great number of complainants were employed in the industries at Bristol and used this road daily to and from their work. The road was satisfactory and afforded adequate access to and from their homes. * * *''

Then the bill alleges that the T. V. A. undertook to furnish an alternate substitute route for use by the complainants and others in similar situations, and as to this alternate route the bill alleges that this road was not satisfactory and not usable during the winter months of the year and by it their journeys from home to Bristol were 6 miles longer than by the old road. T. V. A. was

informed of this and an effort was made to get some relief from T. V. A., but complainants were advised by T. V. A. that there was nothing more that could be done and T. V. A. admitted that they could never provide complainants with an access comparable to the one they had had.

The bill then alleges that in this situation complainants filed a petition with the County Judge requesting the Commissioners to assess damages under Chapter 201, Private Acts of 1929, and that on the direction of T. V. A., the County Judge refused to appoint such Commissioners and that therefore, the complainants were compelled to file this suit in Chancery Court.

 We will not consider seriatim the assignments of error made by the County to support its appeal. The assignments of error completely ignore the effect of the contract which the County entered into with T. V. A. on April 4, 1949. From the allegations of the bill as we have set them out above, we hold that the complainants state a cause of action against the County for compensation for the taking of a property right, not unliquidated damages in tort, *Hollers* v. *Campbell County,* 192 Tenn. 442, 241 S. W. (2d) 523, under the decision of *Morgan County* v. *Goans,* 138 Tenn. 381, 198 S. W. 69, 5 A. L. R. 198, where in the course of the opinion, Judge Lansden said:

"Therefore the question arising is whether Mrs. Goans, not abutting upon the main Wartburg road has such a right therein as to recover damages for the obstruction of her way to this road. We are of opinion that she has. * * * The great weight of authority is to the effect that a member of the general public, showing special damages, can recover for an

obstruction of a public road.'' *Morgan County* v. *Goans,* 138 Tenn. at page 383, 198 S. W. at page 69.

''This question has been decided adversely to the contention now made by the county (that no land had been taken and that only ingress and egress had been impaired) in several reported cases in this state, and it is now the settled law of this state that a county is liable to an abutting landowner where, in the construction of a street or road, the owner's right of ingress and egress is cut off or impaired. *Hamilton County* v. *Rape,* 101 Tenn. 222, 47 S. W. 416; *Morgan County* v. *Goans,* 138 Tenn. 381, 198 S. W. 69, 5 A. L. R. 198; *Shelby County* v. *Dodson,* 13 Tenn. App. 392.'' *Knox County* v. *Lemarr,* 20 Tenn. App. 258, 260, 97 S. W. (2d) 659, 660.

The complainants allege in their bill that substitute roads furnished by T. V. A. under its contract with the County, make their journey to Bristol and other places beyond the river much longer than it was before the obstruction of the highway and bridge; that the substitute roads are rougher and not so well maintained; and that in fact, they are impassable in times of bad weather. These are allegations of special damage, which preclude demurrer under the rule of *Patton* v. *City of Chattanooga,* 108 Tenn. 197, 65 S. W. 414, and *Lynn* v. *Polk,* 76 Tenn. 121.

In an able and lucid opinion by Judge Faw, details of special damage to a property owner similarly situated, were defined:

''The distance from complainants' residence to their mail box is twenty poles greater by the new road than by the old road, and the distance to the mill and store is forty-six poles greater by the new road than by the old road.

"The old road is comparatively level and when the roads are kept in repair a much larger 'load' can be hauled in wagons or other vehicles to or from the farm of the complainants, for the reason that the aforesaid 'approach' to the new road from complainants' place is 'very steep.'

We think it is clear from the evidence that the inlet and outlet to and from complainants' home and farm by way of the aforesaid 'approach' to the new road is not an adequate substitute for the old road, and the obstruction of the old road would inflict upon complainants an injury peculiar to themselves and different from that suffered by the general public." *Blake* v. *Skelton*, 5 Tenn. App. 539, 555.

When obstruction of a public road compelled abutting property owners to travel much further in reaching certain necessary points than previously, they might maintain a bill in equity to enjoin the obstruction. And this relief is not confined to those whose property actually abuts upon the highway, but is available to all those whose use of the highway is affected by the obstruction. *Hill* v. *Hoffman*, Tenn. Ch. App., 58 S. W. 929.

In the present case, complainants recognized that an injunction was improper since the obstruction was made by Federal authority. They further recognized that their rights arose under the contract of the County with T. V. A., but were in doubt how to assert those rights in view of the contract and Chapter 201 of Private Acts of 1929. This situation furnished all the essentials for a declaratory judgment under Code sec. 8835 et seq. Both defendants assert that the Chancellor's declaration, on overruling the demurrers, was premature. We find no merit in this: (1) the Chancellor was com-

pelled to define or declare complainants' rights in giving his reasons for overruling the demurrers. (2) In order to direct the future course of the litigation, the effect of the contract and the Private Acts of 1929 had to be stated by the Chancellor. The extent of the declaration was in the Chancellor's discretion. *Harrell* v. *American Home Mortg. Co.,* 162 Tenn. 371, 36 S. W. (2d) 888; *Newsum* v. *Interstate Realty Co.,* 152 Tenn. 302, 278 S. W. 56; *Ball* v. *Cooter,* 185 Tenn. 631, 207 S. W. (2d) 340. (3) The rights of the defendants to make defense, within the proper scope of the suit, against the claims for compensation of the complainants was not affected by the declaration, so that the defendants suffered no prejudice, which is necessary to put the Chancellor in error.

■ Where the statutory provisions for the closing of an old road are disregarded, or not strictly followed, the easements which abutting property owners had acquired in the old road, are appurtenant to their land and a vested right of which they cannot be deprived without compensation. *Blake* v. *Skelton,* supra, 5 Tenn. App. at page 553; *Morgan County* v. *Goans,* supra, 138 Tenn. at page 384, 198 S. W. 69; *Yates & Donelson Co.* v. *City of Memphis,* 137 Tenn. 642, 645, 194 S. W. 903; *Anderson* v. *Turbeville,* 46 Tenn. 150, 157; *Hill* v. *Hoffman,* supra.

■ In its assignments of error the defendant T. V. A. asserts its Federal immunity and that complainants have not followed the exclusive statutory requirements to secure relief for a "taking by T. V. A." By entering into the contract of April 4, 1949, with Sullivan County, and therein explicitly in paragraph 8, quoted above, agreeing to indemnity the County against the claims of property owners affected, and insisting on its exclusive right to defend and settle all claims of affected property

owners, T. V. A. waived its Federal immunity and opened the door to complainants for a suit on the contract. Compare: *Esso Standard Oil Co.* v. *Evans,* 194 Tenn. 377, 387, 250 S. W. (2d) 569. Other assignments of error made by defendant T. V. A. are merely repetitory of those made by the County and which we have considered above.

██ ██ In their bill, complainants assert that there is a Private Act, Chapter 201, Private Acts of 1929, which defines and determines the right of Sullivan County to close highways and also provides for the methods by which citizens of the County damaged by the closing of such highways, may be indemnified; that complainants in compliance with the terms of said Private Act, made application to the County Judge that he appoint Commissioners to hear the petitioners' plea for compensation for damages on account of the closing of said road, but that the County Judge failed and refused to appoint said Commissioners because of the contract of the County with T. V. A., and therefore, the complainants are compelled to file the bill in the Chancery Court against the County and T. V. A., seeking a construction and application of the above Private Act, and construction of the contract of the County with T. V. A., by which the County Judge repudiated the provisions of said Private Act. The complainants further prayed in the alternative, either that the County Judge be ordered to appoint Commissioners to assess the damages of complainants or that the Chancery Court appoint such Commissioners.

Since the County Judge is not made a party defendant, we agree with defendants' contention that no order can be entered against him under the present frame of the bill. Furthermore, we are of the opinion that the County has elected to substitute the contract of April 4, 1949, with

T. V. A., for the method of settlement of claims provided by the Private Act of 1929, and therefore, neither the County nor T. V. A. is in position to invoke the Private Act.

██ However, the Chancellor, under the Declaratory Judgments Act, Code Sec. 8835 et seq., had jurisdiction to make the declaration sought by the complainants of their rights under the contract of April 4, 1949, and having jurisdiction of that element of the controversy, he has jurisdiction to hear all proof and enter such orders and decrees as may be necessary to effect a final settlement between the parties. Gibson's Suits in Chy., 1937 ed., sec. 36, p. 53. Accordingly, we are of the opinion that after overruling the demurrers, the defendants should be permitted to plead further and when the issue is made that proof be taken and the special damages of complainants, if any, be determined by the Chancellor, by reference in his discretion, and that a final decree be entered in the Chancery Court in this cause, adjudicating the rights of the parties to the controversy.

The decree of the Chancellor overruling the demurrers of the defendants is affirmed, and the cause remanded to the Chancery Court for further steps consistent with this opinion. The defendants will pay the costs.