**A. F. GREEN, Sr.**

v.

**ICI AMERICA, INC.**

**Civ. A. No. 6134.**

United States District Court,
E. D. Tennessee, S. D.

Aug. 22, 1973.

Atchley, Atchley & Cox, Chattanooga, Tenn., for plaintiff.

Robert C. Hunt, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

The instant case originally was filed in the Circuit Court of Hamilton County, Tennessee, but was removed to this court pursuant to 28 U.S.C. § 1441 upon February 9, 1971. A motion for summary judgment was lodged by the defendant upon June 2, 1972; this motion was denied on October 30, 1972, without prejudice to a renewal thereof upon a proper record. The defendant has now renewed the motion for summary judgment and attaches in support thereof the affidavit of Norl Hamilton. The defendant also adopts the briefs and affidavits submitted in support of its initial motion for summary judgment.

Essentially, the plaintiff seeks to recover damages for the alleged creation and maintenance of a nuisance at the Volunteer Army Ammunition Plant (Plant) in Tyner, Tennessee. Construction of the Volunteer Army Ammunition Plant was completed in 1943. The plant, designated an an installation of the United States Army, has since that time been actively operated by contractors, such as the defendant, or maintained in a standby status. The present period of active operation dates from March 1966 and coincides with the escalation of our Nation's military commitment in the Republic of Vietnam.

The Plant produces TNT by a procedure known as the "Batch Process". Although the Plant is relatively old, it appears that a sizable portion of the TNT for national military use is produced there. A modernization program was launched after the most recent reactivation of the Plant and is being continued at this time. In any event, the defendant admits that the normal operation of the Plant requires the emission of certain vapors and smokes which are visible and odoriferous under some conditions.

The defendant's motion for summary judgment is generally predicated upon the proposition that ICI America, Inc. is entitled to share the sovereign immunity of the Government of the United States. This immunity, the defendant argues, is accorded a contractor with the United States who performs the contract in a non-negligent manner according to government specifications and at the direction of government officials. The plaintiff replies that cost-plus-fixed-fee contractors with the Government do not share the sovereign's immunity and that, in any case, because the United States has waived its immunity, the defendant cannot now raise the shield of immunity which the sovereign has itself cast down.

An examination of the complaint discloses that the sole ground upon which the plaintiff may be said to predicate his action is private nuisance. Inasmuch as federal jurisdiction here rests upon diversity of citizenship, this Court is of course committed to apply the law of the State of Tennessee. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

The law relating to governmental immunity, in its various forms, can hardly be characterized as static.[1] However, as recently as 1966, an authoritative source was able to state:

"[T]he cases discussed . . . apply the principle that where the act, or failure to act, which causes an injury is one which the contractor was employed to do, and the injury results not from the negligent manner of doing the work, but from the performance thereof or failure to perform it at all, the contractor is entitled to share the immunity from liability which the public enjoys, but that the contractor is not entitled to the immunity of the public body from liability where the injury arises from the tortious manner of performing the work.

"Thus the courts are practically unanimous in holding him not liable for necessary and incidental damages."[2]

Before undertaking a review of the Tennessee case law, it should be noted that perusal of the complaint evinces no allegation that the defendant performed its contract or conducted its work in a negligent manner.

Perhaps the landmark case in this area of the Tennessee law is Chattanooga & Tennessee River Power Co. v. Lawson, 139 Tenn. 354, 201 S.W. 165 (1917). There the plaintiff owned land lying near the Tennessee River. The defendant contractor constructed upon that river the Hale's Bar Dam, pursuant to an agreement and in accordance with specifications provided by the United States of America. The dam was deeded to the United States upon the completion of its construction. The lake created by the erection of the dam at some water levels overflowed onto land lying between the old riverbed and the plaintiff's home. When the water receded, a stagnant pond was created. Because the defendant had not cleared this land of vegetation, it was found that the pond provided a suitable breeding ground for the malaria-carrying anopheles mosquito. The plaintiff and his family contracted malaria and were indisposed for some time. The plaintiff recovered a judgment for $2000 in the trial court, but the Court of Civil Appeals reversed and dismissed the action. The Supreme Court of Tennessee affirmed. The Court noted:

"The [defendant] was only a contractor, under the United States, doing for it the work that was done for the improvement of navigation of the Tennessee River. The improvement, when completed, became the property of the United States. The [defendant] was guilty of no negligence, having performed the work strictly in accord with the specifications furnished to it by its employer." 139 Tenn. at 369–370, 201 S.W. at 168–169.

The Court remarked that, "[T]he liability of the [defendant] must be measured by that of the United States." 139 Tenn. at 370, 201 S.W. at 169. Dealing with the plaintiffs' assertion that if the works erected were a nuisance the contractor was not immune, the Court said:

". . . . This presupposes that public works erected by the United States under authority of Congress can be held a nuisance. This is an incorrect view. We think the true view is stated in Joyce on Nuisances, § 67; that:

"'Works of internal improvement which have been erected by the United States for the benefit of its citizens do not become public nuisances from the fact that the neighborhood is thereby rendered unhealthy by the obstruction of running water, and a consequent overflowing upon adjoining land, and the character of such works is not changed by the fact that they are transferred to a private corporation which is required to maintain the same, for the purpose of their creation.'

---

1. W. Prosser, Law of Torts, § 131, at 984 et seq., (4th ed. 1971).

2. Annot., 9 A.L.R.3d 382, 385 (1966). *See also*, Annot., 97 A.L.R. 205 (1935).

"For the same reason it could not be abated as a private nuisance at the suit of an individual. Furthermore, if the government has the right to erect public improvements it has the right to employ servants to do the work, and those servants cannot be sued where they act strictly in the line of their employment, executing the orders of the United States. If the rule were to the contrary, then it would be impossible for the United States to serve the public by the erection of great works of internal improvement for the benefit of all. . ." 139 Tenn. at 373, 201 S.W. at 169.

In a subsequent Tennessee case, Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S.W.2d 1 (1950), the defendant contractor widened Rossville Boulevard in Chattanooga under a contract with the State of Tennessee. The City of Chattanooga prepared the plans for this task but the state engineer actually supervised the work. Damage resulted to the plaintiff's land adjoining the street. Justice Burnett, writing for a unanimous court, said:

"The contractor . . . was doing the work under contract with the State, and the City was not a party to this contract. This contractor did what the State's representative in charge of the project ordered it to do . . . The contractor was guilty of no negligence in the manner in which it did this work, and the damage done to the plaintiff resulted from the work being done rather than from the contractor's negligence in doing it. . .

\* \* \* \* \* \*

"It is a well settled rule in this State that a contractor constructing a public improvement for a public authority is not liable to a private property owner for the resulting damage where the contractor acts in accordance with the public authority's orders and is not itself guilty of negligence in the man-

ner in which it does the work." 191 Tenn. at 482–483, 235 S.W.2d at 2–3.[3]

In Gulf Refining Co. v. Mark C. Walker & Son Co., 124 F.2d 420 (C.C.A. 6, 1942), a diversity of citizenship case relying upon Tennessee law, it was said:

"There is no substantial controversy with respect to the legal principles applicable to the issue presented. The appellee concedes that a contractor or subcontractor doing work for the government in accordance with its requirements is not liable to a third person for its incidental effect upon his property, and that there is no presumption of negligence . . .

\* \* \* \* \* \*

". . . As we have already pointed out, there is no controversy with respect to the nonliability of a government contractor for incidental or consequential damage when he does work for the government in accordance with its requirements." 124 F.2d at 425–426.[4]

■ A perusal of the affidavits submitted in support of the defendant's motion for summary judgment impresses this Court with the high degree of control and supervision which the United States Army exercised over the defendant's operation of the Plant. The Plant was the property of the Government and the entire production of the Plant was intended for Government consumption. An examination of the record in light of the controlling Tennessee law leaves no doubt that the defendant is entitled to share the sovereign immunity of the United States.

It would serve no purpose to discuss the competing policy considerations implicit in the case at bar; the Court is obliged to follow the broader policy and indeed the constitutional mandate enunciated in *Erie, supra.*

The plaintiff contends that the United States has waived its immunity (there-

---

3. *See also,* Trigg v. H. K. Ferguson Co., 30 Tenn.App. 672, 209 S.W.2d 525 (1947).

4. *Cf.,* Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); Ernst v. General Refractories Co., 202 F.2d 485 (6th Cir., 1953).

fore precluding the defendant from "sharing" it) by virtue of a provision in the contract between the Government and the defendant which calls for the defendant to be reimbursed "for liabilities to third persons for loss of or damage to property . . . arising out of the performance of this contract, whether or not caused by the negligence of the Contractor . . ."

The plaintiff cites in support of this contention the Tennessee case of Stewart v. Sullivan County, et al, 196 Tenn. 49, 264 S.W.2d 217 (1953). The *Stewart* case, however, is believed to be distinguishable upon its facts. There it appears that Sullivan County, liable by statute to abutting owners for disposing of a public road, agreed to permit the closing of the road by the T.V.A. in return for T.V.A.'s agreement to indemnify the County for any claims arising out of the road closing. The County made no claim of governmental immunity. The T.V.A.'s immunity claim, based upon failure of the claimants to follow the federal statutory requirements for securing relief against it, was denied.

In the principal case there is no statutory waiver of the governmental immunity. In the absence of any Tennessee decision in point, it must be presumed that the State would follow the universal rule as stated in 54 Am.Jur., "United States" § 132:

> "The United States may waive its exemption from suit by legislative enactment giving its consent to be sued. Generally, it is said that the consent of the United States to suit against it can be obtained only through an act of Congress. No officer of the government can waive the exemption of the United States from judicial process, or submit the United States or its property to the jurisdiction of the court in a suit brought against its officers, where jurisdiction has not been conferred by an act of Congress. Neither can a state authorize a suit against the Federal government in the state courts." [Footnote omitted]

Under the undisputed facts in this case it would appear clear that the United States has not and could not lawfully waive its sovereign immunity by the action of the military in placing an indemnity provision within its contract with I.C.I.

For the reasons stated above, the Court is of the opinion that the defendant contractor is entitled to claim immunity from suit that the law accords the United States in a lawsuit of this nature. Furthermore, the Court is of the opinion that the United States may not be found to have waived its immunity from suit under the undisputed facts of this case. The defendant's motion for summary judgment will accordingly be granted.

An order will enter in accordance with this opinion.