BASTNAGLE *v.* LIFE & CASUALTY INS. CO.

(*Nashville,* December Term, 1934.)

Opinion filed March 19, 1935.

COSTON & CRABTREE, of Memphis, for plaintiff in error.

ALLEN COX, JR., of Memphis, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit upon an accident insurance policy which was dismissed by the trial court, and the plaintiff appeals in error. The case was heard upon a stipulation of facts.

The plaintiff is the widow of Charles Bastnagle, who was killed under circumstances hereafter detailed. Bastnagle took out what is known as an "Industrial, Travel and Pedestrian Policy" with defendant company, of which policy his wife was the beneficiary, in the event of the insured's death.

Insured was employed by the Anderson-Tully Company of Memphis, a lumber concern, in the capacity of hoisting engineer. His duties required him to operate a locomotive or traveling crane. This crane is mounted and operated on a car resembling a railroad flat car and about half the length of an ordinary railroad flat car. Motive power is furnished by a dummy steam engine or motor, and the crane comprises a steel hoist, or boom, controlled by steel cables. The same engine or motor which operates the hoist or boom also propels the car. The entire outfit is capable of propelling itself along a standard railroad track and is capable of pushing or pulling two or three railroad cars of logs.

While this locomotive crane, or traveling crane, was being operated by the deceased, it had picked up a pontoon, or small barge, and was moving the barge toward the river. The crane was moving on a track and upon a trestle, the boom being extended carrying the pontoon. The crane became overbalanced and fell from the trestle carrying deceased, who was riding upon the crane and operating it at the time. He received injuries from this fall which brought about his death.

As heretofore stated, the policy issued by the defendant is one commonly called a "travel policy." One clause of the contract undertakes to provide protection for the insured while he is a pedestrian on the public highway or riding a bicycle. The other clause of the

contract, upon which this suit is based, among other things, undertakes to provide insurance against "collision of or by any accident to any horse drawn vehicle or motor driven automobile, in or on which the insured is riding or driving, or any motor driven truck in or on which the insured is riding or driving."

It is the contention of the plaintiff that deceased was riding or driving a motor-driven truck at the time he was killed, and therefore was at that time within the coverage of the policy. We do not think this contention can be sustained.

It is argued that every word of the policy must be given some meaning; that the insurance provided, where there is an accident to a private motor-driven automobile, would have covered the insured had this accident happened to an ordinary truck using the highways. It is said that the term "automobile" would include a truck; that accordingly the separate coverage provided for one driving or riding a motor-driven truck must have been intended to cover vehicles other than ordinary trucks seen on the highways; that otherwise the separate provision as to trucks would be meaningless.

There was dispute for a time as to whether trucks should be classed as automobiles in contracts like the one before us. In other words, whether insurance against automobile accidents covered truck accidents. Perhaps the provision with reference to truck accidents was included in this policy to remove uncertainty.

Under no view of the case, however, can we bring ourselves to the belief that this locomotive crane is a motor-driven truck within the meaning of the policy. Possibly, broadly construed, motor-driven truck might include the car upon which the boom or hoist rested and the

engine that propelled the car. This we do not find it necessary to decide. When, however, there is superimposed on the car a heavy hoist or boom with cables and other attachments, the entire outfit can certainly not be described as a truck any longer. The truck is only a part of the machine and the identity of the part is lost in the integrated whole.

From a practical standpoint, the accident under consideration would not have happened to a truck. It was the superstructure and the operation of the superstructure that overbalanced the outfit. The accident was something, therefore, that could not have reasonably been within the contemplation of an insurer undertaking to offer protection against an accident to a motor-driven truck.

In addition to the foregoing, the entire general purpose of the policy is to afford protection to persons while traveling—as pedestrians, riding bicycles, or riding automobiles or trucks. The premium charge was small, and it would unwarrantably stretch the terms of the contract to hold that it covered such an accident as the one in which the deceased lost his life. He was not traveling at all but was engaged at his regular place of work, operating dangerous machinery. Affirmed.