STATE *ex rel.* TOBIN, COMMISSIONER, *v.* INDEPENDENT LIFE INS. CO. *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

M. S. Ross, of Nashville, for intervening petitioner-appellee.

WALKER & HOOKER, of Nashville, for respondent-appellant.

. Mr. Chief Justice Green delivered the opinion of the Court.

In the above-styled cause the affairs of the Independent Life Insurance Company are being wound up in the chancery court through a receivership. The case is before us now on *certiorari* to the Court of Appeals, which court reversed a decree of the chancellor dismissing an intervening petition by which the beneficiary of a policy issued by the company sought recovery thereon.

The petitioner, Mrs. Mamie L. Hill, took out a policy on the life of her husband, Trueman Hill, who was the driver of a fire truck in the employ of the City of Nashville. While driving this truck to a fire that vehicle collided with another vehicle, the fire truck was overturned, and Hill was killed. The policy upon which petitioner sues is what is known as an "industrial, travel and pedestrian policy."

Among other obligations undertaken by the insurer is payment for death "if the Insured shall by the collision of or by any accident to any railroad passenger car, passenger steamship, public omnibus, street railway car, taxicab or automobile, stage or bus, which is being driven or operated at the time by a person regularly employed for that purpose, and in which such Insured is traveling as a fare paying passenger or on which he is lawfully riding on a pass; or by the collision of or by any accident to any private horse drawn vehicle or private motor driven automobile in which Insured is riding or driving; or shall by any accident to any passenger elevator (mine elevators excepted) in which Insured is riding as a passenger; provided that in all cases referred to in this paragraph there shall be some external or visible evidence on said vehicle of the collision or accident."

The proof as to this vehicle and its equipment is not very fully developed in the record. The only testimony introduced was that of petitioner. She described it as a truck, motor-driven by gasoline, only differing from other trucks in that it contained fire hose, pumps, picks, axe, and brooms. She went into some detail to show that the truck was similar to that described in *Life & Casualty Ins. Co.* v. *Cantrell*, 166 Tenn., 22, 57 S. W. (2d), 792. She used much of the same language in her description that this Court employed in the above case describing a truck which was held to be an automobile within the coverage of a policy against death by accident to a private motor-driven automobile. The petitioner, however, shows that this was a fire truck, attending fires, and the proof shows that it was equipped with a pump and other fire-fighting apparatus.

The policy sued on is a limited liability policy covering accidental death, not generally, but only under particular circumstances specified. It is obvious that the death of petitioner's husband cannot be brought under any coverage of the policy unless he can be said to have suffered death in a "private motor-driven automobile." This contention is plausibly urged. The argument is that this was not a public vehicle in which members of the public might ride or ship their goods but was a private vehicle though owned by the City of Nashville.

It may be conceded that an automobile belonging to the city and used by the mayor or other officer in the discharge of his duties of supervision or inspection does not lose character as a private motor-driven automobile merely because of the municipal ownership. Such a vehicle is used just as a private owner employs his car in the discharge of his business and the risk is not greater.

The risk of driving a fire truck, however, through crowded city streets where such a vehicle is ordinarily used is undoubtedly much greater than of the ordinary driving of a privately owned automobile. Fire trucks are driven by necessity at breakneck speed, they observe no traffic signals at intersections, rely on their sirens to clear the way and not on careful driving. The speed of private automobiles on city streets is limited by ordinance, they are bound to observe traffic signals at intersections, and their drivers are charged by law with careful operation.

This Court said in a case where it was sought to bring a motorcycle with a side car attached under the coverage of a policy similar to the one before us that "The risk element forms the basis of all tabulated insurance premiums, and the insurer has a right to insist that the risk he undertakes to assume shall not be enlarged beyond the terms of his contract." *McDonald* v. *Life & Casualty Ins. Co.*, 168 Tenn., 418, 423, 79 S. W. (2d), 555, 556. This suit was dismissed.

In common acceptation of the terms used, we think no one could class a fire truck as a private motor-driven automobile.

The case before us is somewhat similar to that of *Bastnagle* v. *Life & Casualty Ins. Co.*, 168 Tenn., 587, 79 S. W. (2d), 1025, 1026. In that case the policy covered accidents to the insured riding or driving "any motor driven truck." The insured was operating a vehicle which the Court said possibly might be called a motor-driven truck but for the fact that a locomotive crane was superimposed upon the vehicle. In the operation of this crane the outfit was overturned. The Court said that there having been superimposed on the truck "a heavy hoist or boom with cables and other attachments" the

entire outfit could no longer be described as a truck. It was added "The truck is only a part of the machine and the identity of the part is lost in the integrated whole. From a practical standpoint, the accident under consideration would not have happened to a truck. It was the superstructure and the operation of the superstructure that overbalanced the outfit. The accident was something, therefore, that could not have reasonably been within the contemplation of the insurer undertaking to offer protection against an accident to a motor-driven truck." (page 590 of 168 Tenn., page 1026 of 79 S. W. 2d).

So we think that the vehicle here involved, as it was equipped and used, lost its identity as a private motor-driven truck in the sense of the policy and that there can be no recovery herein.

This case is before us for the second time. On the first hearing it appeared that the trial judge had dismissed the suit on demurrer. From the record before us on the first hearing the Court could not tell from the meager allegations of the petition just the sort of vehicle in which the insured was riding when he met his death. The Court thought there might be possible merit in the case if the facts were fully developed and reversed the judgment below for that reason, following the practice noted in *Sartain* v. *Dixie Coal & Iron Co.*, 150 Tenn., 633, 658, 266 S. W., 313. The Court did not intend to sustain the demurrer nor to overrule it.

The judgment of the Court of Appeals is reversed and the suit dismissed.

CHAMBLISS, NEIL, PREWITT, and GAILOR, JJ., concur.